Caleb Avery t'Bear
Pro Se
2 Jones Street; Unit 202
New York, NY 10014
(415) 699-4951
CalebFW@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CALEB AVERY T'BEAR,

                        Plaintiff,

v.

BARRY FORMAN, et al.

                        Defendants.

Case No. 17-cv-00796-JSC

**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PER RULE 19 (B)**

Date:            TBD
Time:            TBD
Courtroom:       F – 15th Floor
Judge:           Hon. Jacqueline Corley

## I. INTRODUCTION

        Indispensable Parties.

        Rule 19 requires that if a court cannot accord complete relief among existing parties or a party claims an interest relating to subject of the action and is so situated that disposing of the action could impair or impede that party's ability to protect that interest (or leave that person with the possibility of multiple or inconsistent obligations) the court may dismiss all or part of a claim because indispensable parties are absent. With the filing of his Amended Counterclaim seeking, Defendant is seeking: 1) dissolution and/or non-recognition of the partnership between Plaintiff and Defendant; 2) collecting from the Plaintiff as guarantor of the Demand Notes (under a signed Memorandum of Understanding ("MOU")) rather than the stated payor; and 3)

rescission of the collateral assignments recognized by the MOU. By seeking to not collect properly from Urso, Ltd. ("Urso") and to seize intellectual property from FairWay IP Holdings, Ltd. ("FWIPH") Counterclaimant seeks remedies that affect both Urso and FWIPH (the "Indispensible Parties").

More particularly, in his Amended Counterclaim, Defendant Forman requests that he bypass making demands for payment on Urso and seeks collateral from FWIPH that has been the property of FWIPH for almost a decade.  At the very least, Claims for Relief in the Amended Counterclaim must be dismissed.  At issue is Defendant's assertion that the Memorandum of Understanding (MOU) entered into between Plaintiff and Defendant (Exhibits A & B) is invalid and/or should be rescinded. At no time, however, has Defendant offered a substantiated basis for doing so. Whenever Defendant has asserted this, Defendant has not offered a legal basis for invalidation or rescission or Defendant has not offered evidence (corroborated or otherwise) in support of any legal basis for invalidation or rescission of the MOU. Defendant's most recent allegations that the MOU should be invalidated appears in (Dkt# 122). By this time, it has become clear that Plaintiff/Counterdefendant would be adversely affected by any determination that the MOU is invalid or rescinded. So also would certain others who are not yet parties to this litigation (also Indispensible Parties hereto) because they would now be charged by any judgment with potential rulings that (i) debts are owed or (ii) their assets have or may become subject to superior collateral rights or even defeasement or (iii) FairWay companies they have or are becoming entitled to equity interests in have or may lose some or all of their value because the intellectual property rights they require to operate are lost. They are Urso (Belize), FWIPH (Caymans), and more than 100 senior secured collateral debt investors in FairWay since the date of the MOU (as above, also potential Indispensible Parties hereto).

Upon knowledge and belief, Plaintiff asserts that the two parties named above, Urso and FWIPH (hereinafter referred to as the "Indispensible Parties") are wholly dependent both upon the benefits established for them under the MOU. Under the MOU, the FairWay intellectual property (including FairWay patents) was released by Defendant as collateral previously pledged to Defendant under secured promissory notes described in Defendant's Counterclaims and part of the record in this litigation. One effect of this release of collateral rights was to allow FWIPH to present itself since, now, and in the near future by offering licenses to its intellectual property, software based on such intellectual property, and provision of technical services in order to establish its global business network. Another benefit of the MOU was to restructure payments Defendant claimed were payable. Part of such restructuring was to substitute Urso for Plaintiff as payor of any such debt. Further, Urso's obligations to make payments were expressly limited to funds Urso received as dividends or otherwise from its subsidiary, FWIPH. While the focus of this Motion is upon Urso and FWIPH, it should be noted that over 100 debt investors in FairWay were provided with first (i.e. collectively first) senior position collateral rights made available since Defendant gave up his collateral rights in the FairWay intellectual property. Plaintiff has not had rights to this pledged collateral that belongs to FWPIH for over a decade (even pre-dating the MOU).

If the MOU is invalidated or rescinded, then:

(a)    FWIPH's intellectual property and patent portfolio could be made subject to both security interests that would make its licensing program suspect to prospective customers, because the intellectual property could be made subject to execution (seizure) by Defendant;

(b)    The favorable payment terms under the MOU could be reverted back to the original terms of the original Demand Notes, meaning Urso could be obligated

---

to accelerate the payment of hundreds of thousands or potentially millions of dollars yet with no resources to do so; and, finally,

(c)     The over 100 debt investors who received first position senior security interests in the FairWay intellectual property upon making their debt investments in FairWay would lose their priority with indeterminate consequences to their secured investments.

Arguably, all of these rather extreme adverse results upon Indispensible Parties not yet joined to this litigation create legal interests and provide a motivation for them to participate in it with potentially catastrophic results if they do not. While Plaintiff invites the Court to consider the appropriateness of including over 100 senior debt investors, Plaintiff will focus on Urso and FWIPH as appropriate Indispensible Parties for purposes of this Motion to Dismiss.

The MOU Assailed

Before Plaintiff began representing himself, Defendant questioned the MOU while admitting it. However, on June 14, 2018, Defendant moved to amend his Counterclaims (Dkt #: 80) asserting that the MOU be rescinded (Dkt #: 80, page 4, lines 24-25), that the alleged partnership between Plaintiff and Defendant did not exist (page 5, lines 8-20) and that Defendant should have his collateral rights in the FairWay intellectual property reinstated (including, in large part, the FairWay patent portfolio (Dkt # 80). The Court granted the request for leave to amend and now not only are Plaintiff's rights and obligation affected thereby, but also the rights and obligations of both Urso and FWIPH.

MOU Entered Into Freely and With Knowledge

In various pleadings, Defendant only recently claims that he did not enter into the MOU or did not enter into it freely or with knowledge of its meaning or intent. To the contrary, Defendant freely negotiated the terms and language of the MOU. Defendant signed the MOU

and admitted to this in his deposition (Exhibits C and D and Exhibit Dkt #80, page 4, line 27 and page 5, line 7). Defendant even admits why he entered into the MOU, including saying that "…it was to eliminate obstacles to someone who might want to invest" (Exhibit C, page 164, lines 2-4) and "…it's something I did to advance a cause." (Exhibit C, page 164, lines 15-16) and "It was in my economic interest as a shareholder initially in Fairway Financial US,·and subsequently in other OpCo's if and when they were ever created."·(Exhibit C, page 133, lines 2-5). Defendant had intimate knowledge of the Indispensable Parties including their role with respect Plaintiff and Defendant's partnership, The FairWay Group. Avery Declaration ¶ 2. Defendant participated in assigning such roles to these Indispensable Parties and assisted in the creation of a cash flow plan, management succession plan and intellectual property protection plan which required the Indispensable Parties to play significant roles. Avery Declaration ¶ 3.

Both Plaintiff and Defendant understood and believed their partnership existed as a practicable and working agreement. The FairWay Group could not and would not succeed without additional third party investment. As noted above, Defendant Forman has admitted that he realized at the time that his release of the FairWay intellectual property as collateral was necessary to make it available to new investors in order to obtain additional investment. It was a tradeoff.  Without it though, the FairWay business(es) would fail, and there would likely be no source of funds or other assets in order for Indispensable Parties, Plaintiff, or The FairWay Group (the partnership itself) to repay Defendant. In this sense, the MOU (and release of the FairWay intellectual property) represented a calculated risk for Defendant. But, it had a significant potential upside to Defendant's share of the partnership. Failing to enter the MOU was almost certainly all downside.

1    Defendant seeks relief now, over almost two years into this litigation, that by its nature

2    will require the joinder the Indispensable Parties. However, doing so at this late date may not be

3    practical or just.

4        Timely Changes

5        In summary, Defendant has made this MOU (and its terms and conditions) an issue in his

6    current Reply in Support of Forman's Counterclaims (Dkt #: 122) pages 10-12, making this

7    Motion to Dismiss timely and ripe for adjudication.

8

9    **II.    STATEMENT OF FACTS**

10   Brief Background of the Partnership

11

12       Defendant did not name any of the identified Indispensable Parties in his pleadings and

13   has still not done so. Yet, Defendant seeks relief in his Counterclaim and Amended

14   Counterclaim, as well as undetermined damages that are necessarily going to negatively affect

15   these Indispensable Parties as well as the proceeds affecting them and Plaintiff.  This Court

16   should not proceed with Defendant's Counterclaim case without the stated payor being a party to

17   the litigation when establishing and collecting a debt is its objective. Similarly, how can the

18   Court proceed to allow Defendant to establish collateral rights when the owner of the property

19   that would be affected by such rights is not a party to this litigation? It would seem

20   fundamentally inequitable to allow this or, in fact, the entire Counterclaim case to proceed to the

21   disadvantage of so many FairWay investors, but particularly the Indispensable Parties.

22

23       Furthermore, Defendant has never even made a single demand for repayment of any

24   Demand Notes on Urso, attempting to "skip" a critical step and instead making the demands for

25   repayment of the Demand Notes on Plaintiff who backed the loans under the terms of the MOU.

26   Therefore, Defendant does not even know what repayment might be made (and when) by Urso.

27

1
2
3
4
5
6
7
8
9
10

As a separate but relevant matter, this litigation is about both Plaintiffs' claims regarding partnership as well as Defendant's Counterclaims regarding debt repayment. Permeating these claims are questions of Defendant's partnership performance and whether it affected not just Plaintiff but all stakeholders, including the Indispensible Parties. Defendant's breaches of his duties to the partnership with Plaintiff would have had a direct effect on the cash flows of FWIPH and its ability to pay dividends to Urso and, hence, Urso's ability to repay Defendant's Demand Notes under the MOU. Defendant's failure and delay to collect from Urso or otherwise address the debt obligations of Urso until now puts Plaintiff, Urso, and FWIPH at an unfair prejudice which rules of equity ought to prevent.

11
12
13
14

The issues relating to Plaintiff and Defendant's FairWay partnership are well documented in pleadings in this litigation, including Plaintiff's original Claim and Defendant's various counterpleadings. There is also a chronology of the specific events of the partnership and the MOU are attached as Exhibit E.

15
16

Formation of the Business Relationship.

17
18
19
20
21
22
23
24
25
26
27

Plaintiff and Defendant met in 2006. Following discussions about the FairWay business opportunity, Defendant made several loans to Plaintiff and, eventually, in 2009 Defendant proposed that they enter into a business partnership. (See Plaintiff's original Claim, see also Exhibit C, page 29, line 9 through page 33, line 8), known as "The FairWay Group". The purposes of The FairWay Group included overseeing the Indispensable Parties and a licensing entity known as FairWay International (Hungary), now abandoned. The main business purpose of The FairWay Group, however, was to establish and fund regional operating companies around the world for FairWay licensees. The terms of The FairWay Group partnership were negotiated and set forth in substantial part in a draft "Collaboration Agreement" prepared jointly by Plaintiff and Defendant, which is a continuing subject of controversy in this action. The terms of The FairWay Group partnership arrangement were augmented by supplemental agreements and

documentation including establishing the partners' roles and compensation and the partnership

equity split in Equity Capitalization Tables (Exhibits H-K).

Lending.
Defendant made loans to Plaintiff subject to Secured Promissory Notes issued in California

(and subject to its laws) during the period 2006 to 2011. These notes provided for repayment by

Plaintiff.

Memorandum of Understanding (MOU)

Plaintiff and Defendant entered into the MOU on or before the end of 2011. The MOU

modified the terms of the above-mentioned promissory notes. In particular, Urso Ltd. became the

stated payor of any underlying debt. The payment terms were modified such that amounts due

were made subject to the availability of funds received by Urso Ltd. from and through its

licensing subsidiary, FairWay IP Holdings Ltd. Further, Defendant's security interest in and to

FairWay intellectual property, including in particular the FairWay patents, was extinguished.

Defendant retained a security interest in plaintiff's other assets, such as but not limited to equity

in FairWay Financial US, Inc., an unfunded and an as-yet unlicensed FairWay Operating

Company and any equity held by Plaintiff in Urso Ltd.  These arrangements were, by their nature

perpetual, at least until such time as any debts owing Defendant were fully paid. No changes

were made to the principal or interest amounts stated in the promissory notes. As consideration

for the MOU, Defendant received benefits including (but not limited to):

1.  Defendant was able to distribute partnership equity rights to his children.

2.  Additional debt investment to The FairWay Group.

3.  Establishment FWIPH as global licensor.

4.  Establishment of payment terms and methods for Urso.

5.  Avoidance of a collapse of business opportunity.

In connection with the partners' entry into the MOU, on or before December 22, 2011, Urso capitalized FWIPH with the FairWay patent portfolio and other FairWay intellectual property. Avery Declaration ¶ 4. As hoped, from the date of the MOU, Plaintiff, The FairWay Group, Urso and FWIPH have obtained additional investment in FairWay by, in part, granting senior security interests to such investors in the FairWay intellectual property, made possible, in part, by Defendant's release of his security interests in the FairWay intellectual property. Avery Declaration ¶ 5.

Further, since the effectiveness of the MOU, FWIPH proceeded to hold itself out to the marketplace as a potential licensor of financial industry changing software and services as a precursor to launching its global licensing business. Avery Declaration ¶ 6. First, Urso and then FWIPH participated in fund raising including granting *de novo* security interests in and to the intellectual property collateral that had been released by Defendant. Avery Declaration ¶ 7.

By October 2008, Defendant began claiming that repayment of his loans was due. Discussions between Plaintiff and Defendant were brokered by Timothy Covington who had been legal counsel to Plaintiff but who was well known to and had worked closely with Defendant. During those discussions, Mr. Covington attempted to argue each party's case to the other neutrally, rather as anyone's advocate. At times, the parties appeared close to a resolution. However, fund raising efforts for FairWay declined as Defendant breached his fiduciary duties to the partnership, and funds were not available to repay Defendant at that time. Those discussions broke down in approximately December of 2016. The assets that Defendant now seeks effective control over, to the detriment of all current stakeholders including but not limited to the Indispensible Parties, have not been property of Plaintiff for some dozen years and Defendant knows this. Plaintiff, the Indispensible Parties, even the new debt investors since the date of the

1
2

MOU and other stakeholders including sweat equity key participants) have all acted in reliance on the effectiveness of the MOU ever since its inception.

3

<u>Increased Importance of Indispensable Parties</u>

4
5
6
7
8
9
10

This action was filed by Plaintiff in or about January 2017 as an action to affirm Plaintiff and Defendant's dissolution of partnership, for breach of partnership fiduciary and other duties, an accounting and request for damages. Defendant responded with a Countercomplaint for repayment of loans, naming Plaintiff and only Plaintiff as the (sole) Counterdefendant. Nowhere in Defendant's pleadings then or more recently in his Motion to Amend Countercomplaint has Defendant mentioned the Indispensable Parties, Urso and FWIPH.

11
12

**III. LEGAL STANDARD FOR DIMISSAL UNDER RULE 19 (b).**

13
14
15
16

There are at least two parties affected by Defendant's Counterclaims that have not been served and not been joined to this case, Urso (Belize) and FWIPH (Cayman Islands). Both Urso and FWIPH are certainly *required* parties for potential joinder. Specifically, under Rule 19(a)[1]:

17
18
19
20
21
22

(a)  Persons Required to Be Joined if Feasible.
    (a)  *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
        (A) in that person's absence, the court cannot accord complete relief among existing parties; or
        (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
            (i)    as a practical matter impair or impede the person's ability to protect the interest; or

23
24
25
26
27

---

[1]    New subdivision (a) defines the persons whose joinder in the action is desirable. Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability. See Reed, supra, 55 Mich.L.Rev. at 330, 338; Note, supra, 65 Harv.L.Rev. at 1052–57; Developments in the Law, supra, 71 Harv.L.Rev. at 881–85. Notes of Advisory Committee on Rules – 1966 Amendment.

28

---

(ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(b) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(c) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

However, Plaintiff asserts that both Urso and FWIPH are *indispensible* parties.

Specifically, under Rule 19(b):

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether Plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Under Rule 19(c), pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and
(2) the reasons for not joining that person.

Whenever feasible, the persons materially interested in the subject of an action should be joined as parties so that they may be heard and a complete disposition made.[2] When this

---

[2]   The word "Indispensable," appearing in original subdivision (b), was apparently intended as an inclusive reference to the interested persons in whose absence it would be advisable, all factors having been considered, to dismiss the action. Yet the sentence implied that there might be interested persons, not "indispensable." in whose absence the action ought also to be dismissed. Further, it seemed at least superficially plausible to equate the word "indispensable" with the expression "having a joint interest," appearing in subdivision (a). See *United States v. Washington Inst. of Tech., Inc.*, 138 F.2d 25, 26 (3d Cir. 1943); cf. *Chidester v. City of Newark*, 162 F.2d 598 (3d Cir. 1947). But persons holding an interest technically "joint"

---

1   comprehensive joinder cannot be accomplished—a situation which may be encountered in

2   Federal courts because of limitations on service of process, subject matter jurisdiction, and

3   venue—the case should be examined pragmatically and a choice made between the alternatives

4   of proceeding with the action in the absence of particular interested persons, and dismissing the

5   action.[3]

6        The two parties which are *indispensible* to be joined are Urso and FWIPH. Both

7   companies would suffer irreparable harm if Defendant's Counterclaims were allowed to proceed

8   without their joinder. Moreover, if a ruling in this matter would allow Defendant to execute on

9   the FairWay intellectual property as collateral, subsequent execution by Defendant would

10  deprive FWIPH of its business purpose and revenue and deprive Urso of its dividend income

11  (i.e., Urso Ltd. would suffer loss of future cash flows (e.g., dividends) from FWIPH). Avery

12  Declaration ¶ 8. FWIPH would lose the ability to license its intellectual property and patent

13  portfolio and provide related transaction software and services to process securities pricing

14  unhindered by the actions of Defendant. Avery Declaration ¶ 9. Therefore, because their interests

15  would be substantially affected, both Urso and FWIPH should, as Indispensable Parties, be

16  allowed to defend their interests before a determination is made which could significantly affect

17  their interests.

18       Further it should be noted by the Court that Defendant was intimately involved in:

19  1.  The assignment of the FairWay patent portfolio from Plaintiff to Urso. Avery

20      Declaration ¶ 10.

---

26  are not always so related to an action that it would be unwise to proceed without joining all of
    them, whereas persons holding an interest not technically "joint" may have this relation to an
27  action. See Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327, 356 ff.,
    483 (1957). *Ibid.*

    [3]      *Ibid.*

---

2. The reassignment of the FairWay intellectual property and patent portfolio from Urso to FWIPH to facilitate future fundings of The FairWay Group under a Secured Note program co-designed between the partners (i.e., Plaintiff and Defendant). Avery Declaration ¶ 11. Further, Defendant knew any of his rights to the intellectual property and patent portfolio would be released and pledged instead to new security holders under the Secured Note program when he signed the MOU. Avery Declaration ¶ 12. *See also* Exhibits A & B.

3. Now, Defendant seeks to undo the prior two transactions of reassignment of the intellectual property and patent portfolio (without involvement of those Indispensible Parties) in which he had full involvement in and that were to his benefit at the time of the execution of the MOU and as a partner of Plaintiff. Defendant seeks to not only affect both foreign corporations, but over 100 equity shareholders in FairWay Financial U.S., Inc. (both domestic and international) who are also current senior holders of security interest in the intellectual property and patent portfolio of FWIPH under the Secured Note program. Avery Declaration ¶ 13. Rescinding the security interest in FairWay's intellectual property and patent portfolio (and volunteered by Defendant in signing the MOU) to Defendant now would be impractical if not impossible to do and would affect hundreds of innocent parties who are not parties to the case in this Court. Rescission might also either retroactively implicate Defendant in criminal securities fraud and/or (possibly) expose Plaintiff to similar legal exposure.

4. If the ownership of the FairWay intellectual property and patent portfolio (now assigned to FWIPH) were put into question, the global FairWay business model collapses, both calling into question past grants of security interests (collateral) and

1
2
3
4

giving potential rights to unwind the related investment loans under the Secured Note

program, as well impairing future financing of any FairWay entities and/or FairWay

Operating Companies and clearly these values are far in excess of the matters in

dispute in the case before this Court. Avery Declaration ¶ 14.

5
6

Further, Counterclaimant has always had the adequate remedy of pursuing claims (if any)

against Urso in Belizean courts and against FWIPH in Cayman courts.

7
8
9
10
11
12
13
14
15
16
17

With regards to Rule 19 Subdivision (b).—When a person as described in subdivision

(a)(1)–(2) cannot be made a party, the court is to determine whether in equity and good

conscience the action should proceed among the parties already before it, or should be dismissed.

That this decision is to be made in the light of pragmatic considerations has often been

acknowledged by the courts. See *Roos v. Texas Co*., 23 F.2d 171 (2d Cir. 1927), cert. denied, 277

U.S. 587 (1928); *Niles-Bement-Pond Co. v. Iron Moulders, Union*, 254 U.S. 77, 80 (1920). The

subdivision sets out four relevant considerations drawn from decided cases. The factors are to a

certain extent overlapping, and they are not intended to exclude other considerations that may be

applicable in particular situations.[4]

18
19
20
21
22
23
24
25
26

The first factor brings in a consideration of what a judgment in the action would mean to

the absentee (i.e. each of the putative Indispensable Parties). Would the absentee be adversely

affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote

and minor? The possible collateral consequences of the judgment upon the parties already joined

are also to be appraised. Would any party be exposed to a fresh action by the absentee, and if so,

how serious is the threat? See the elaborate discussion in *Reed*, supra; cf. *A. L. Smith Iron Co. v.

Dickson*, 141 F.2d 3 (2d Cir. 1944); *Caldwell Mfg. Co. v. Unique Balance Co*., 18 F.R.D. 258

(S.D.N.Y. 1955). In this case, both Urso and FWIPH would suffer irreparable harm if

27

---

[4]     *Ibid.*

---

Defendant's Counterclaims were allowed to proceed in their absence. Effectively they would both be put out of business. Both foreign corporations would have a cause of action against Defendant (and possibly even the Plaintiff in this case). There would also be collateral consequences to Plaintiff who has invested over a dozen years in the FairWay technology and its global deployment through The FairWay Group.

The second factor calls attention to the measures by which prejudice may be averted or lessened. The "shaping of relief" is a familiar expedient to this end. See, e.g., the award of money damages in lieu of specific relief where the latter might affect an absentee adversely. *Ward v. Deavers*, 203 F.2d 72 (D.C.Cir. 1953); *Miller & Lux, Inc. v. Nickel*, 141 F.Supp. 41 (N.D.Calif. 1956). On the use of "protective provisions," see *Roos v. Texas Co.*, supra; *Atwood v. Rhode Island Hosp. Trust Co.*, 275 Fed. 513, 519 (1st Cir. 1921), cert. denied, 257 U.S. 661 (1922); cf. *Stumpf v. Fidelity Gas Co.*, 294 F.2d 886 (9th Cir. 1961); and the general statement in *National Licorice Co. v. Labor Board*, 309 U.S. 350, 363 (1940). This is not acceptable either; monetary damages to Defendant might also be inadequate remedy to the Indispensable Parties. Plaintiff knows of no "shaping" of relief which might fence off any negative consequences to the two identified Indispensable Parties. The Indispensable Parties in this case have neither the means nor the opportunity to participate in litigation on foreign soil (i.e., the United States) or through any expensive dispute resolution process.

Sometimes the party is himself able to take measures to avoid prejudice. Thus a defendant faced with a prospect of a second suit by an absentee may be in a position to bring the latter into the action by defensive interpleader. See *Hudson v. Newell*, 172 F.2d 848, 852 mod., 176 F.2d 546 (5th Cir. 1949); *Gauss v. Kirk*, 198 F.2d 83, 86 (D.C.Cir. 1952); *Abel v. Brayton Flying Service, Inc.*, 248 F.2d 713, 716 (5th Cir. 1957) (suggestion of possibility of counterclaim under Rule 13(h)); cf. *Parker Rust-Proof Co. v. Western Union Tel. Co.*, 105 F.2d 976 (2d Cir.

1939) cert. denied, 308 U.S. 597 (1939). See also the absentee may sometimes be able to avert prejudice to himself by voluntarily appearing in the action or intervening on an ancillary basis. See Developments in the Law, supra, 71 Harv.L.Rev. at 882; Annot., Intervention or Subsequent Joinder of Parties as Affecting Jurisdiction of Federal Court Based on Diversity of Citizenship, 134 A.L.R. 335 (1941); *Johnson v. Middleton*, 175 F.2d 535 (7th Cir. 1949); *Kentucky Nat. Gas Corp. v. Duggins*, 165 F.2d 1011 (6th Cir. 1948); *McComb v. McCormack*, 159 F.2d 219 (5th Cir. 1947). **The court should consider whether this, in turn, would impose undue hardship on the absentee.** [emphasis added]

The third factor—whether an "adequate" judgment can be rendered in the absence of a given person—calls attention to the extent of the relief that can be accorded among the parties joined. It meshes with the other factors, especially the "shaping of relief" mentioned under the second factor. Cf. *Kroese v. General Steel Castings Corp.*, 179 F.2d 760 (3d Cir. 1949), cert. denied, 339 U.S. 983 (1950).

The fourth factor, looking to the practical effects of a dismissal, indicates that the court should consider whether there is any assurance that Defendant/Counterclaimant, if dismissed, could sue effectively in another forum where better joinder would be possible. See *Fitzgerald v. Haynes*, 241 F.2d 417, 420 (3d Cir. 1957); *Fouke v. Schenewerk*, 197 F.2d 234, 236 (5th Cir. 1952); cf. *Warfield v. Marks*, 190 F.2d 178 (5th Cir. 1951). Defendant/Counterclaimant has always had the proper option of seeking remedies in Belize and/or the Cayman Islands, yet has ignored these alternative options to joinder and venue.

The subdivision uses the word "indispensable" only in a conclusory sense, that is, a person is "regarded as indispensable" when he cannot be made a party and, upon consideration of the factors above mention, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.

1   Further it is not only the (potential) Counterclaims of Defendant against Plaintiff that

2   should be dismissed, but also Defendant's potential Counterclaims against third parties,

3   including the Indispensable parties, Urso and FWIPH, as well as other FairWay investors, since

4   they would otherwise remain vulnerable to a subsequent legal action by Defendant on grounds

5   no firmer than those in this action.  These corollary negative impacts would not only affect

6   Plaintiff, but also both foreign corporations (Urso and FWIPH) as Indispensible Parties, and

7   hundreds of innocent bystanders (including shareholders in FairWay Financial U.S., Inc. as part

8   of the Secured Note program terms, other co-founders of FairWay Financial U.S., Inc., and all

9   executives who have put years of sweat equity into The FairWay Group). Defendant held the

10  highest executive position in The FairWay Group and should be held to a high fiduciary standard

11  to both Plaintiff (his partner), and to shareholders and/or debt holders of any FairWay Operating

12  Company where Defendant had held significant oversight and benefit. All of these respective

13  parties have relied on the past representations of Defendant as Chairman of The FairWay Group

14  and partner of Plaintiff to be non-fraudulent and would suffer negative consequences dwarfing

15  the value of the remedies Defendant now seeks through improper means.

16  <u>Equitable and Other Considerations</u>

17

18      Defendant's attempt to invalidate or rescind the MOU or, prospectively, to proceed

19  without the joinder of Indispensable Parties, would be inequitable on a number of grounds. First,

20  the MOU was negotiated freely by Defendant, and Defendant participated in its drafting. Second,

21  significant consideration was received by Defendant to enter into the MOU, including but not

22  limited to partnership benefits that would not otherwise have been offered to him. This aspect of

23  consideration is a clear mingling of partnership and debt investment interests of Defendant,

24  which, upon signing the MOU became permanently intermingled. As an additional motivation

25  for entering the MOU, Defendant and Plaintiff both knew that additional funding would be

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

required to continue the effort to take the FairWay business forward (lack of which would prevent), and all efforts and investments to date would be lost. Defendant further benefitted by the additional funding that was raised after the date of the MOU and its consequent release of collateral rights of Defendant in order to attract investors. Further, Defendant benefited by ongoing development of intellectual property (now with FairWay Financial U.S., Inc.), and business opportunities for The FairWay Group. Defendant was fully aware of the ramifications of the terms of the MOU which were part of a larger set of arrangements including a business model and partnership terms for The FairWay Group. Defendant participated fully in the development of those arrangements and model, as well as the terms of partnership; none of these were imposed on Defendant or delivered after the fact as a surprise upon Defendant. Defendant was and is a sophisticated investor who understood the terms and consequences of entering the MOU, having had serial careers in law and financial services. Defendant understood, among other things, the following terms of the MOU:

1.  Defendant would no longer have a direct lien on the collateral.

2.  Remedies for any breach, etc. would require addressing Urso, if not also FWIPH.

3.  Urso and FWIPH are subjects of Belize and Belizean law and Cayman Islands and Cayman law, respectively, with personal jurisdiction there and requiring Defendant to bring claims against them in their respective jurisdictions.

4.  Defendant's rights to repayment would be through Urso only.

5.  Loan repayment terms were substantially modified, with being subject to availability of Urso funds expected to be received from and through FWIPH.

6.  The capitalization of Urso by Plaintiff with FairWay intellectual property and the subsequent transfer and capitalization of FWIPH with FairWay intellectual property by Urso were done for multiple purposes, including management

1    succession planning, tax planning, global licensing, and protecting the intellectual

2    property.

3

4         By willingly failing to name or even make a claim or demand against the Indispensable

5    Parties, Defendant in his pleadings and other communications related to this action ignores the

6    fact that the MOU gives clear rights, benefits, and interests with respect to the FairWay

7    intellectual property and revenue it produces, as well as the particulars of continuing obligations

8    to Defendant, to the Indispensable Parties. This failure also ignores the fact that Defendant's

9    essential contest of the validity or for the rescission of the MOU, which arose recently in

10   Defendant's Motion to Amend Countercomplaint, directly and unequivocally affects the

11   Indispensable Parties. Moreover, Defendant has not heretofore communicated with the

12   Indispensable Parties to inquire or demand repayment of any debt or assert any claim of

13   collateral in or to the FairWay intellectual property. In broader perspective, any allegation

14   Defendant has made as to whether Defendant entered into the MOU (something about which he

15   has been equivocal) or whether it is invalid (due to an alleged failure of consideration or

16   otherwise) or should on some other grounds be rescinded were not raised when the MOU

17   became effective in (or before) 2012 or when the parties' relationship deteriorated due to the

18   unavailability of funds to repay Defendant's loans or when Defendant resigned as a partner or

19   when discussions between Plaintiff and Defendant broke down or when Plaintiff filed his action

20   against Defendant in late-2016 or when Defendant filed his Counterclaim thereafter or even

21   when Defendant recently filed his motion to Amend Counterclaim. Defendant could have

22   challenged the validity of the MOU at any time between 2012 and the time he filed his Motion to

23   Amend Countercomplaint. He chose not to, and he has put Plaintiff and the Indispensable Parties

24   at an unfair disadvantage for doing so.

---

**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PER RULE 19(B)**

17-cv-00796-JSC

1
2
3
4
5
6
7
8
9
10
11

For these reasons, Defendant should be estopped for both proceeding with his action against Plaintiff to collect on any date remaining after the disposition of Plaintiff's defenses to the continuing effectiveness of such loans, as well as to any invalidation or rescission of the MOU based on laches due to Defendant's delays. Further, Defendant should be estopped on general equitable grounds from proceeding to invalidate or rescind the MOU without the inclusion of the Indispensable Parties, whose participation is made more unlikely with the passage of time due to Defendant's delay. More specifically, Defendant should be estopped from obtaining any restored collateral rights in the FairWay intellectual property, which for over a decade has been pledged to third parties and used by the Indispensable Parties to proceed with establishing the FairWay network.

12
13
14

For the reasons stated above, Plaintiff asks that Urso and FWIPH be determined to be Indispensible Parties for purposes of this action.

15

### III. CONCLUSION AND REQUEST FOR DISMISSAL

16
17
18
19
20
21
22
23

The validity of Plaintiff and Defendant's partnership as well as Defendant's duties, breach of those duties, and resulting harm are all as described in Plaintiff's pleadings. In connection with the formation of their partnership, and in order to address the financial challenges for FairWay, Plaintiff and Defendant entered into a MOU that changed the payment terms for loans owing to Defendant and released Defendant's collateral rights, so new debt investors could receive superior priority lender collateral—all to the benefit of the partnership (i.e., benefiting both Defendant and Plaintiff). It is important to note again that the FairWay intellectual property was transferred by Plaintiff to Urso over a decade ago and by Urso to FWIPH almost a decade ago.

24
25
26
27
28

The terms of the MOU inured to Defendant's benefit, as well as Plaintiff's and to that of the Indispensible Parties, (Urso and FWIPH, as well as new debt investors in The FairWay Group and shareholders in FairWay Financial U.S., Inc. and executives currently involved in various elements of The FairWay Group ). Both Plaintiff and Defendant believed at the time of entering the MOU that Defendant would have lost his entire debt investment in FairWay had he not

1  entered into the MOU. Accordingly, he was highly motivated to do so. In a most inequitable

2  result, undoing the MOU would maintain the benefits of the MOU received by Defendant in the

3  past by stripping benefits from Plaintiff and the Indispensable Parties (as well as new investors

4  since the MOU) now, after almost a decade of the MOU's existence. The benefits enjoyed by

5  Defendant under the MOU included substantial additional funding of approximately $2 Million

6  and the development of additional FairWay assets including additional intellectual property

7  assets that were possible as a result of that additional funding and further progress made in

8  finding additional large longer range funding sources during the reprieve permitted by additional

9  small debt investment in the short run.

10      To invalidate the MOU and thereby reinstate Defendant's collateral rights in such intellectual

11  property is unjust *per se*. The inequity of doing so increases greatly given how long it has been

12  since the collateral rights were surrendered by Defendant. Similarly, a ruling permitting

13  Defendant to attach assets that are relied upon by a range of stakeholders who are not parties to

14  this case over a period of almost a decade is fundamentally inequitable, including the

15  Indispensable Parties, subsequent debt investors, sweat equity investors including FairWay's key

16  personnel, and other directors and officers, as well as fund raisers who are personally committed

17  to FairWay's success and the investors they have recruited. These patent inequities are

18  compounded by Defendant's late attempts to invalidate the MOU and failure to name the

19  Indispensable Parties to this litigation at an appropriate time. In fact, in none of Defendant's

20  pleadings have the Indispensable Parties even been identified, yet now with Defendant's

21  Amended Counterclaim, there is a clear allegation that the assets of a non-joined party, FairWay

22  IP Holdings, Ltd, should be subject to a reassertion of collateral rights on Defendant's behalf;

23  moreover, there is the allegation that the payment obligations of another non-joined party, Urso,

24  Ltd, would be accelerated.

25      Defendant has had complete knowledge of the Indispensible Parties, Urso and FWIPH. In

26  fact, Defendant collaborated in setting up this FairWay global corporate structure and

27  collaborated in business plans describing cash flows to FairWay Operating Companies, FWIPH

as licensor and Urso as its parent and holding company and source of repayment of loans to Defendant. This arrangement is comprised in part in the MOU. To invalidate it now would be to favor one partner over the other without any legal or equitable justification. There is no fundamental unfairness to Defendant either to include the Indispensable Parties as such or to maintain the MOU in force and effect. Effectively, Defendant is asking for an unfair "do-over" a decade later.

Accordingly, Plaintiff requests that Urso and FWIPH be determined to be Indispensible Parties in this action and that, if the Court also determines that it is not practical to join them, for lack of personal jurisdiction or any other reason, then Plaintiff requests that Defendant's Counterclaims be dismissed.

Date: December 3, 2018

_____
Caleb Avery t'Bear

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court (California Northern District – San Francisco/Oakland Division) using the ECF system, which automatically sends notification of such filing to ECF-registered counsel in this matter. Additionally, I have confirmed that all counsel have registered with ECF in this case.

By:_____
Caleb Avery t'Bear/Pro Se