UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB AVERY t'BEAR,<br><br>Plaintiff,<br><br>v.<br><br>BARRY FORMAN,<br><br>Defendant. | Case No. 17-cv-00796-JSC<br><br>**ORDER RE: COUNTERCLAIMANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING ALLEGED PARTNERSHIP**<br><br>Re: Dkt. No. 182 |

Plaintiff Caleb Avery t'Bear sued Defendant Barry Forman in California state court for breach of fiduciary duty, declaratory relief, and an accounting arising out of a failed business venture. (Dkt. No. 1-1.)[1] Mr. Forman removed the action to this Court pursuant to 28 U.S.C. § 1441(b), based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1 at ¶ 4.) Mr. Forman subsequently brought counterclaims for breach of loan agreements, rescission, and in the alternative, equitable relief. (Dkt. No. 84.) Mr. Forman's counterclaim for rescission is the only remaining claim in this action following the Court's February 6, 2019 order granting Mr. Forman's motion for summary judgment on Mr. t'Bear's complaint, denying Mr. Forman's motion for summary judgment on his rescission counterclaim, denying Mr. t'Bear's cross-motion for summary judgment on Mr. Forman's counterclaims, (Dkt. No. 142), and the Court's February 26, 2019 order granting Mr. Forman's motion for summary judgment on his breach of contract counterclaim, (Dkt. No. 148).

The matter is scheduled for a bench trial on August 20, 2019. (*See* Dkt. No. 177.) At a telephone conference on May 23, 2019, Mr. Forman requested leave to file an early motion in limine regarding evidence related to the existence of a partnership between Mr. t'Bear and Mr.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1 Forman, and the Court granted that request. (Dkt. No. 181.) Mr. Forman filed his motion on May 30, 2019, (Dkt. No. 182), and Mr. t'Bear filed his response on June 20, 2019, (Dkt. No. 183). After careful consideration of the parties' briefing, the Court GRANTS Mr. Forman's motion because the existence of the alleged partnership is not material to Mr. Forman's rescission counterclaim.

**DISCUSSION**

The factual background of this case is set forth in detail in the Court's February 6, 2019 order, (*see* Dkt. No. 142 at 2-12), and the Court incorporates that background here. For ease of reference, the Court restates below background relevant to the instant motion.

In December 7, 2011, Mr. t'Bear emailed Mr. Forman a "Memorandum of Understanding" ("MOU") reflecting a discussion between the parties to reconfigure the "payout plan" for promissory notes reflecting loans made by Mr. Forman to Mr. t'Bear so that Mr. t'Bear could obtain $6 million in funding for FairWay through the sale of notes secured by the FairWay IP. (Dkt. No. 99-4, Ex. 51 at 39-56.) In the cover email, Mr. t'Bear states, in pertinent part: "As you, [Mr. Forman], and I, discussed, as part of the paperwork Urso Ltd. is assigning the FairWay IP portfolio to an IP Holding company, FairWay IP Holdings Ltd. to securitize the $6M in Notes being offered." (*Id.* at 39.)

> Some of the individual Notes in the series have pledged my general and entire asset base [including patents assigned to Urso Ltd.] as collateral. ***As we discussed, as part of our current fundraising, the FairWay Intellectual Property (patents, trademarks, etc.) is being assigned from Urso Ltd. to FairWay IP Holdings Ltd. [Cayman Islands]. To complete that assignment, I would ask you to accept and confirm your understanding that Urso Ltd. would not have direct control over these Intellectual Property assets but continue to have indirect rights to them through its 100% sole ownership of FairWay IP Holdings.*** Specifically, while Urso would no longer have direct title to these assets, it would have rights to the cash flow from the licensing of those assets [net of FairWay IP Holdings obligations to maintain them (legal costs, filing fees, annuities, etc.)], such cash to be received as expense reimbursements or dividends from FairWay IP Holding to Urso. ***In summary, your lien interest [per the Notes] would continue on my general assets including: 1) my 100% ownership of Urso Ltd.; 2) by proxy, Urso Ltd.'s majority ownership of FairWay International; 3) my shares in FairWay Financial U.S., Inc.; and 4) general assets. But it would specifically no longer include direct lien on FairWay Intellectual Property, but rather depend on Urso's sole ownership of FairWay IP Holdings for***

2

> ***repayment of the Notes. The Notes (2006-2011), as a series, are amended to that understanding.***

(*Id.* at 56 (bracketed language in original) (emphasis added).) Mr. Forman attests that:

> [Mr. t'Bear] told me that in order to consummate the transaction [for the $6 million in new funding], he needed a "carve out" of my direct security interest in the FairWay IP. In return, my loans would be repaid by the end of 2012, and I would retain my security interest in all of his other general assets, including, but not limited to, his 100% ownership in Urso.

(Dkt. No. 99-1 at ¶ 64.) Indeed, Mr. t'Bear's December 2011 cover email states, in pertinent part: "For clarity sake, I am attaching the current Loan Manager summarizing all personal Notes outstanding from me to you and a Memorandum of Understanding outlining the carve out of the IP in the general liens on my property to now accommodate the indirect control of the IP." (Dkt. No. 99-4, Ex. 51 at 39.) Mr. t'Bear's cover email also states that pursuant to "[t]he payout plan," he would pay Mr. Forman the balance owed on the loans within six months, "with a small balance by year-end 2012." (*Id.*) Mr. Forman signed and returned the MOU to Mr. t'Bear on December 12, 2011. (Dkt. No. 99-4, Ex. 55 at 164-65.)

Mr. Forman asserts that he "signed the MOU in reliance on [Mr. t'Bear's] promised consideration, including: (1) [Mr. Forman] would be repaid by the end of 2012, and (2) [Mr. Forman] would retain his security interest in [Mr. t'Bear's] 100% ownership of Urso." (Dkt. No. 182 at 4.) As noted above, those terms are included in the MOU. Mr. Forman's counterclaim seeks rescission of the December 2011 MOU because it is "invalid and unenforceable due to failure of consideration." (Dkt. No. 84 at ¶¶ 20-31.) The Court has previously characterized Mr. Forman's rescission counterclaim as "in effect a claim that Plaintiff breached the MOU." (Dkt. No. 142 at 39.) The issue before the Court then is whether evidence related to the existence of a partnership between Mr. t'Bear and Mr. Forman is relevant to resolving whether rescission of the MOU is warranted because Mr. t'Bear breached the MOU. It is not.

The Court's February 6, 2019 order expressly rejected Mr. t'Bear's argument that the existence of a partnership "'is intertwined with any status of the Demand Notes of 2006-2011.'" (Dkt. No. 142 at 28 (quoting Dkt. No. 118 at 18).) In pertinent part, the Court noted:

> [Mr. t'Bear's] argument is belied by the terms of the notes

3

> themselves—none of which mention a partnership—and the Loan Managers, which clearly show that [Mr. t'Bear] understood that the notes at issue were personal loans from [Mr. Forman] to [Mr. t'Bear]. [Mr. t'Bear's] argument is also undercut by the timeframe of the loans—31 of the 33 notes at issue were executed before [Mr. Forman] proposed terms of a partnership to [Mr. t'Bear] in January 2010 and before [Mr. t'Bear] responded to those proposed terms with the draft Preliminary Collaboration Agreement in March 2010. The two loans that came after, in May 2011 and October 2011, contain identical terms and formatting (though different loan amounts) to the notes that preceded them in September 2006, November 2006, December 2006 (2), January 2007 (2), February 2007, March 2007 (3), April 2007, May 2007, June 2007, July 2007 (2), August 2007, September 2007, October 2007 (2), November 2007 (2), December 2007 (2), January 2008, February 2008, April 2008, and May 2008. Again, none of the 33 notes at issue reference a partnership or any other type of business relationship.
>
> The December 2011 MOU from [Mr. t'Bear] to [Mr. Forman] detailing a restructured "payout plan to [Mr. Forman] that would retire the series of Promissory Notes dated from 2006-2011" . . . does not contain any reference to the purported partnership. (*See* Dkt. No. 99-4, Ex. 55 at 165.)

(Dkt. No. 142 at 28-29.) The Court further concluded that "to the extent [it] recognizes a genuine dispute of fact as to the existence of a partnership, that dispute is not material to the breach of contract counterclaim based on the record before the Court." (*Id.* at 29.) The same rationale applies to the rescission counterclaim.

Mr. t'Bear's reply to Mr. Forman's motion in limine reasserts much of the same evidence and arguments regarding the existence of a partnership that the Court considered and rejected at the summary judgment stage. (*See generally* Dkt. No. 183.) The gravamen of Mr. t'Bear's argument is that "the MOU (and any contemplated rescission of the MOU) cannot be assessed without the backdrop *context* of the partnership." (*Id.* at 8.) The Court disagrees.

The Court has already concluded that the existence of a partnership has no relationship to the promissory notes underlying the MOU. (*See* Dkt. No. 142 at 28-29.) The Court has further concluded that the MOU "does not contain any reference to the purported partnership." (*Id.* at 29.) Simply put, the MOU itself and Mr. t'Bear's December 2011 cover email to Mr. Forman expressly frame the restructured payment plan in "personal" terms, and there is nothing to suggest that the existence of a partnership is relevant to resolving whether Mr. t'Bear breached the MOU.

//

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Mr. Forman's motion to exclude documentary evidence at trial regarding the existence of a partnership between Mr. t'Bear and Mr. Forman. This Order does not preclude Mr. t'Bear from offering oral testimony as to his understanding of the relevance of the alleged partnership to the MOU—it merely precludes Mr. t'Bear from spending time at trial attempting to prove the existence of the partnership. Thus, no exhibits should be submitted that are offered solely to prove the existence of a partnership; instead, as with the summary judgment motions, the Court will presume the partnership's existence when deciding the rescission claim.

**IT IS SO ORDERED.**

Dated: June 28, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge