1  CHARLES R. JAEGER (SBN 171039)
2  DAVID M. GOLDSTEIN (SBN 142334)
   **FARMER BROWNSTEIN JAEGER & GOLDSTEIN LLP**
3  235 Montgomery Street, Suite 835
   San Francisco, CA 94104
4  Telephone: (415) 962-2879
   Email: cjaeger@fbj-law.com
5          dgoldstein@fbj-law.com
6  **ATTORNEYS FOR DEFENDANT AND**
   **COUNTER-CLAIMANT BARRY FORMAN**

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  CALEB AVERY t'BEAR,                    Case No. 3:17-cv-00796-jsc

14              Plaintiff,                 **DEFENDANT/COUNTER-CLAIMANT**
                                           **BARRY FORMAN'S OPPOSITION TO**
        v.                                 **AVERY'S MOTION TO DISMISS FOR**
15                                         **FAILURE TO JOIN INDISPENSABLE**
16  FORMAN, and DOES 1-50, inclusive,      **PARTIES**

              Defendants.                  **Date:** August 1, 2019
17                                         **Time:** 2:00 p.m.

18                                         **Hon. Jacqueline Scott Corley**
19                                         **Courtroom F, 15th Floor**

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.  Background ............................................................................................................ 2

    A.   Forman Seeks Rescission of the MOU and Restoration of His Direct
        Security Interest in the FairWay IP ............................................................ 2

    B.   Avery's Constantly Changing Positions Regarding Indispensable Parties ................. 3

III. Avery's Rule 19 Motion to Dismiss Should Be Denied ......................................... 5

    A.   Avery Waived the "Required Party" Defense Under Rule 19(a) as to Urso
        and FWIPH ................................................................................................ 5

    B.   Urso, FWIPH and Avery's Other Lenders Are Not Required Parties......................... 7

        1.   Rule 19(a)(1)(A):  The court can "accord complete relief among
            the existing parties" .................................................................................... 7

        2.   Rule 19(a)(1)(B):  The absent parties do not claim any interest and,
            in any event, Avery is representing any attenuated interest they
            might have .................................................................................................. 9

        3.   Avery's Concerns Regarding Possible Future Events Are Irrelevant ........... 11

    C.   If Urso or FWIPH Is a Required Party It Can Be Joined Under Rule
        19(a)(2) ..................................................................................................... 12

    D.   If Urso or FWIPH Is a Required Party But Joinder Is Not Feasible, the
        Trial Should Proceed Without It ............................................................... 13

    E.   Objection to Evidence Regarding Avery's Rule 19 Motion to Dismiss .................. 16

IV.  Avery's "Primary Right" Defense Is Without Merit.............................................. 17

V.   Conclusion............................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Altmann v. Republic of Austria,*
    142 F. Supp. 2d 1187 (C.D. Cal. 2001) .................................................................. 10

*Askew v. Sheriff of Cook County, Illinois,*
    568 F.3d 632 (7th Cir. 2009) ................................................................................... 13

*Cachil Dehe Band of Wintun Indians v. Cal.,*
    547 f.3d 962 (9th Cir. 2008) ..................................................................................... 9

*Citibank, N.A. v. Oxford Properties & Finance Ltd.,*
    688 F.2d 1259 (9th Cir. 1982) ................................................................................... 6

*Crowley v. Katleman,*
    8 Cal. 4th 666 (1994) .......................................................................................... 18, 19

*Davis v. M&M Developer, LLC (In re MBM Entm't, LLC),*
    531 B.R. 363 (S.D.N.Y. Bankr. 2015) ....................................................................... 7

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.,*
    375 F.3d 861 (9th Cir. 2004) ..................................................................................... 7

*First Nat'l Ins. Co. of Am. v. Peralta Cmty. College Dist.,*
    No. 12-cv-5943 JSC, 2013 U.S. Dist. LEXIS 21265 (N.D. Cal. Feb. 15, 2013) ........... 7, 9

*Humboldt Baykeeper v. Union Pacific R.R. Co.,*
    No. C06-02560 JSW, 2009 U.S. Dist. LEXIS 48131 (N.D. Cal. June 1, 2009) ............... 6

*JP Morgan Chase Bank, N.A. v. McDonald,*
    760 F.3d 646 (7th Cir. 2014) ................................................................................... 10

*Lomayaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) ................................................................................... 7

*Lundeen Coatings Corp. v. Dep't of Water & Power,*
    232 Cal. App. 3d 816 (1991) ..................................................................................... 8

*Martin v. Bridgeport Community Ass'n, Inc.,*
    173 Cal. App. 4th 1024 (2009) .................................................................................. 8

*McDowell v. Watson,*
    59 Cal. App. 4th 1155 (1997) .................................................................................. 18

*Merced County Mut. Fire Ins. Co. v. State of California,*
    223 Cal. App. 3d 765 (1991) ................................................................................... 17

*Mycogen Corp. v. Monsanto*,
   28 Cal. 4th 888 (2002) ........................................................................................................ 19

*Northrop Corp. v. McDonnell Douglas Corp.*,
   750 F.2d 1030 (9th Cir. 1983).......................................................................................... 11

*NovelPoster v. Javitch Canfield Group*,
   No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 46375 (N.D. Cal. Apr. 1, 2014) ......... 13

*Paiute-Shoshone Indians of the Bishop Cmty v. City of Los Angeles*,
   637 F.3d 993 (9th Cir. 2011)............................................................................................ 13

*Pasco Int'l (London), Ltd. v. Stenograph Corp.*,
   637 F.2d 496 (7th Cir. 1980)............................................................................................ 15

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) ......................................................................................................... 13

*Sheppard v. Banner Food Products*,
   78 Cal. App. 2d 808 (1947) ................................................................................................ 8

*Simmons v. Cal. Institute of Technology*,
   349 Cal. 2d 264 (1949) .................................................................................................... 17

*SiRNA Therapeutics, Inc. v. Protiva Biotherapies, Inc.*,
   No. C-06-1361 MMC, 2006 U.S. Dist. LEXIS 90773 (N.D. Cal. Dec. 1, 2006) ........... 10

*Slater v. Blackwood*,
   15 Cal. 3d 791 (1975) ...................................................................................................... 18

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
   173 F.3d 915 (4th Cir. 1999)............................................................................................ 13

*United States v. Bowen*,
   172 F.3d 682 (9th Cir. 1999).............................................................................................. 9

*Ward v. Apple*,
   791 F.3d 1041 (9th Cir. 2015)............................................................................................ 8

*Washington v. Daley*,
   173 F.3d 1158 (9th Cir. 1999).......................................................................................... 10

**Statutes**

Cal. Civ. Code § 1559 ............................................................................................................ 7

iii

**Other Authorities**

1 B.E. Witkin, Summary of California Law, Contracts § 709 (11th ed. 2019) .................................. 7, 8

Moore's Federal Practice ¶ 19.05[1][b] ........................................................... 14

Moore's Federal Practice ¶ 19.05[4] .............................................................. 15

W. Schwarzer, Federal Civil Procedure Before Trial ¶ 7:127 (The Rutter Group 2019) ..................... 6

W. Schwarzer, Federal Civil Procedure Before Trial ¶ 7:131 (The Rutter Group 2019) ................... 13

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................. 6

Fed. R. Civ. P. 12(b)(7) ............................................................................. 6

Fed. R. Civ. P. 12(c) ................................................................................. 6

Fed. R. Civ. P. 12(h)(2) ........................................................................... 5, 6

Fed. R. Civ. P. 19(a) .......................................................................... 1, 5, 7, 11

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................... 7, 15

Fed. R. Civ. P. 19(a)(1)(B) ......................................................................... 9

Fed. R. Civ. P. 19(a)(2) ........................................................................... 12

Fed. R. Civ. P. 19(b) ......................................................................... *passim*

Fed. R. Civ. P. 19(b)(1) ........................................................................... 14

Fed. R. Civ. P. 19(b)(2) ........................................................................... 14

Fed. R. Civ. P. 19(b)(3) ........................................................................... 15

Fed. R. Civ. P. 19(b)(4) ........................................................................... 15

Fed. R. Civ. P. 19(c) ............................................................................... 4

## I.   Introduction

In 2011, Avery induced Forman to sign a Memorandum of Understanding ("MOU") by which Forman relinquished his direct security interest in the FairWay IP and accepted instead a continuing security interest in Avery's 100% ownership of Urso.  In 2016, Avery breached the MOU by implementing his 4 Urso Shareholder Scenario to dilute his ownership of Urso from 100% to 25%. Based on this breach of the MOU, Forman seeks rescission of the MOU so his original direct security interest in the FairWay IP is restored.  *See* ECF 192.

Seeking to avoid the consequences of his deliberate breach of the MOU, and with the day of reckoning approaching, Avery is making increasingly attenuated and illogical arguments.  In his Rule 19 motion, Avery contends for the first time that the case cannot proceed to trial without 160 persons and entities who have loaned him money since 2012 and to whom Avery asserts he has pledged the FairWay IP as collateral.  Avery maintains that all his other lenders are required parties under Rule 19(a) and then plays "Gotcha!", arguing that adding some of them will destroy diversity jurisdiction (because some are residents of Washington where Mr. Forman resides), so the case must now be dismissed – less than three weeks before trial.  Avery contends that Forman must seek relief for Avery's breach of his obligations to Forman under the MOU by refiling his claim in state court against not only Avery but also Avery's other lenders.  This argument is factually and legally empty, and it also underscores what the Court has witnessed for more than a year:  Avery will say and do *anything* to avoid repaying his debts or being held responsible for his actions.

Avery's sudden, laser-like focus on the other people who extended loans to him since 2012 is a sea change from his complaint – which is based on a significant degree on the MOU – in which he decided not to join or even mention these lenders.  It also is a remarkable reshuffling of the arguments he made in his two previous Rule 19 motions to dismiss, which asserted that Urso and FairWay IP Holdings ("FWIPH") were indispensable parties and suggested that Forman's rescission claim should be litigated in Belize or the Cayman Islands.  Perhaps recognizing that asking the Court to force Forman to pursue his claim in Belize or the Cayman Islands is a non-starter, Avery now asserts for the first time that Forman should be forced to file a brand-new lawsuit in state court and join 160 of Avery's other lenders that Avery himself deliberately did *not* join to this case.  This new argument is

as wrong as it is desperate.  As we explain below, neither Usro, nor FWIPH nor Avery's lenders are "required" parties under Rule 19(a), let alone indispensable parties under Rule 19(b).  Avery's new indispensable party motion is just another "gambit" to escape his debts, and the Court should promptly reject it.[1]

## II.    Background

### A.    Forman Seeks Rescission of the MOU and Restoration of His Direct Security Interest in the FairWay IP

Forman's rescission claim is simple.  In 2011 Avery induced Forman to relinquish his direct security interest in the FairWay IP and to accept instead a continuing security interest in Avery's 100% ownership of Urso.  In 2016, however, while ostensibly negotiating a potential forbearance agreement with Forman, Avery and Timothy Covington conspired behind Forman's back to implement the 4 Urso Shareholder Scenario to dilute Avery's 100% ownership of Urso to 25% to "thwart" any action by Forman with respect to the FairWay IP.  The declaratory relief Forman seeks for this clear breach of the MOU is limited to "[a] declaration from the Court that the [MOU] is rescinded."  ECF 84, ¶ 31 and Prayer for Relief ¶ 2.  Rescinding the MOU will simply restore Forman's pre-MOU direct security interest in the FairWay IP.  To that end, Forman is only asking the Court to determine his rights with respect to Avery.  He is not asking the Court to determine any other lender's rights as to Avery.  Nor is Forman asking the Court to determine his rights vis-à-vis any other lender, to rule that he has a greater or lesser security interest than any other lender, or to rule that he has a "priority lien" as to anyone else.  Forman simply wishes to have the MOU rescinded and his security interest in the FairWay IP restored.[2]

---

[1] To the extent we understood Avery's defenses when Forman filed his trial brief, we briefly addressed them in that brief.  ECF 192.  In Section IV below, we respond to Avery's "primary right" defense in his Rule 19 brief because it provides his most complete description of it.

[2] Avery claims his other lenders are "senior secured collateral debt investors" (ECF 188 at 1-2) and that previously Forman had a "priority security interest" (ECF 188 at 28).  He offers no evidence, law or analysis supporting his characterization of these security interests, but that does not matter.  Again, Forman is not asking the Court to determine any issue regarding Forman's rights vis-à-vis Avery's other lenders.

**B.      Avery's Constantly Changing Positions Regarding Indispensable Parties**

The attenuated nature of Avery's new indispensable party argument is evident from his ever-changing position about whether there are any required or indispensable parties at all and, if so, who they are.

- In his complaint, which placed the MOU squarely at issue, Avery chose not to join Urso, FWIPH or any of his other lenders as parties.

- In his Certification of Interested Entities or Persons pursuant to Local Rule 3-15, Avery certified that "other than the named parties, there is no such interest to report."

- In his three answers, Avery chose not to assert a required or indispensable party defense.

- In his first two Rule 19 motions filed in December 2018, Avery argued for the first time that Urso and FWIPH are indispensable parties requiring dismissal.

- Now, three weeks before trial, Avery argues for the first time that the case must be dismissed because his other lenders are indispensable parties.

When Avery filed his complaint, he took the position that there are no required or indispensable parties. He did not join Urso, FWIPH or any of his other lenders even though his complaint is based to a significant degree on the MOU. ECF 1-1, ¶¶ 12-14. For example, his breach of fiduciary claim expressly incorporates his allegations regarding the MOU and asserts that Forman breached duties under the MOU. *Id.* ¶¶ 15-21. His claim for declaratory relief "contends that obligations outlined by the terms of the Notes were modified by the terms of the MOU" and seeks "a judicial declaration from this Court relating to the above and the parties' rights, duties and obligations to each other." *Id.* ¶¶ 26, 29. More specifically, Avery sought a judicial declaration that "Forman breached his duties and obligations and that obligations outlined by terms of the Notes were modified by the terms of the MOU." *Id.* (Prayer). The MOU was so central to Avery's claims that the only exhibit he attached to his complaint was the MOU (albeit an unsigned version dated August 6, 2012 rather than the actual, signed December 12, 2011 document). *Id.* Ex. A.

Thus, it was Avery, not Forman, who originally sought a determination of the parties' "rights, duties and obligations" under the MOU. Having done so, if Avery believed Urso, FWIPH or any of

his other lenders had an interest in the MOU and therefore were required parties, he was obligated in his complaint either (1) to join them if it was feasible to join them, or (2) to identify them and explain in his complaint "the reasons for not joining" them. Fed. R. Civ. P. 19(a), (c).  He did neither.  What is more, when Avery filed his Certification of Interested Entities or Persons pursuant to Local Rule 3-15, he affirmatively certified that "other than the named parties, there is no such interest to report." ECF 7.

 Following his strategy not to name Urso, FWIPH or any of his other lenders in his complaint, Avery made a calculated decision not to assert a Rule 19 defense in each of his three answers, including his answer to the rescission claim.  ECF 32, 37, 112.  Nor did he file a motion to dismiss or motion for judgment on the pleadings based on Rule 19.

These were not rookie mistakes by a pro se litigant; Avery was represented by counsel when he filed his complaint and his Certification.  These were calculated and deliberate decisions designed to keep Urso, FWIPH and his other lenders out of the case.  As part of this strategy, Avery refused to produce documents concerning his loans from others and continued to withhold them until he filed this motion on July 12, 2019 – which was the first time he produced these documents.[3]  Forman's first request for production sought documents "relating to any loans or debts owed by Avery t'Bear, the FairWay Group or any FairWay operating company to any person or entity other than Forman." Goldstein Decl. Ex. 1 (8/25/17 Avery RFP Response No. 47).  Avery objected and refused to produce responsive documents on the grounds that the request "inappropriately seek[s] personal and private information which is beyond the scope of discovery and not relevant nor likely to lead to relevant evidence."  *Id*.  Thus, in both his pleadings and in discovery Avery made calculated and deliberate decisions to keep Urso, FWIPH and his lenders out of the case.

Last December – when faced with dispositive motions that could end the entire case in Forman's favor – Avery suddenly filed two Rule 19 motions urging dismissal because Urso and FWIPH were not joined as parties.   ECF 129 at 4, 22; ECF 132 at 5, 21.  In those motions, Avery

---

[3] Forman objects to the use and admissibility of the exhibits to Avery's declaration.  *See* Section III.E below.  Nonetheless, Forman responds to Avery's arguments based on those exhibits and his claim that he obtained loans from 160 lenders to whom he granted a security interest in the FairWay IP.

mentioned his other lenders, but his request for dismissal was based on Urso and FWIPH being the indispensable parties, not his other lenders.  *Id.*  The Court denied both of Avery's motions to dismiss on procedural grounds.  ECF 130, 133.  In its summary judgment order, the Court deferred ruling on Forman's rescission claim based in part on its observation that Urso, which owns the FairWay IP through FWIPH, is not named as a party in the action.  ECF 142 at 39.  Avery has seized upon that comment to file his new motion to dismiss under Rule 12(h)(2).  Now, however, he is taking an entirely different position.  Avery seems to be arguing that the indispensable parties requiring dismissal are not Urso and FWIPH as before, but rather his many other lenders to whom he has pledged the FairWay IP as collateral.  For example, Avery's Conclusion asks the Court to dismiss Forman's rescission claim specifically because his other lenders are indispensable parties and joining them will destroy diversity jurisdiction, but it does not mention Urso or FWIPH.  ECF 188 at 35.

In short, Avery has shifted from a position of no indispensable parties, to Urso and FWIPH being indispensable parties requiring dismissal, to his personal lenders being indispensable parties requiring dismissal.  With that backdrop, it is clear that Avery realized his arguments regarding Urso and FWIPH would fail, so he drew up a different "Hail Mary" play for dismissal based on his other lenders.  The Court should reject Avery's latest gamesmanship and deny the motion.

## III.   Avery's Rule 19 Motion to Dismiss Should Be Denied

As we explain below, Avery's shifting positions, strategies and tactics are unavailing. Avery's Rule 19 motion should be denied because:  (1) he waived the required party defense as to Urso and FWIPH (if he is arguing they are "required" under Rule 19(a) but not "indispensable" under Rule 19(b)); (2) in any event, Urso, FWIPH and Avery's other lenders are not required parties under Rule 19(a); (3) if Urso and FWIPH are required parties under Rule 19(a) they can be joined; and (4) if Urso and FWIPH are required parties but cannot be joined, then under Rule 19(b) the case should proceed to trial without them.

### A.   Avery Waived the "Required Party" Defense Under Rule 19(a) as to Urso and FWIPH

Avery's notice of motion asserts that "Urso, Ltd., FairWay IP Holdings, Ltd. and 160 senior secured collateral debt investors are both necessary and indispensable parties . . . ."  ECF 188 at 1-2.

5

In his brief, however, Avery focuses on his lenders rather than Urso and FWIPH as the indispensable parties requiring dismissal. This is underscored by Avery's Conclusion, which asks for dismissal based on his lenders who reside in Washington, not based on Urso or FWIPH. EDF 188 at 35. Whether Avery is asserting that Urso and FWIPH are required or indispensable parties is important for the following reason: The indispensable party defense under Rule 12(h)(2) (*i.e.*, the absent party is required but cannot be joined, and the case should be dismissed under Rule 19(b)) may be raised at any time including at trial; however, the required party defense under Rule 12(b) (*i.e.*, the absent party is required and can be joined) is waived if it is not asserted in a party's first responsive pleading. Judge White succinctly explained waiver of the required party defense in *Humboldt Baykeeper v. Union Pacific R.R. Co.*:

> Finally, Defendants unpersuasively argue that the issue of whether the State is a necessary party cannot be waived. Defendants argue that the language of Rule 19(a) does not impose any obligation on the parties to protect the interests of absent persons, but instead, is directed at the courts. However, Defendants ignore the plain language of Federal Rule of Civil Procedure 12 and the case law holding that the affirmative defense of failure to join necessary parties may be waived if objections are not made in the first responsive pleading. Rule 12(b) provides that every defense, including the failure to join a party under Rule 19, must be asserted in the responsive pleading if one is required. Rule 12(h)(2) merely exempts the failure to join a person required under Rule 19(b) from waiver, not necessary parties under Rule 19(a).

No. C 06-02560 JSW, 2009 U.S. Dist. LEXIS 48131, *6-7 (N.D. Cal. June 1, 2009) (citations omitted); *see Citibank, N.A. v. Oxford Properties & Finance Ltd.*, 688 F.2d 1259, 1263 n.4 (9th Cir. 1982*)* ("In federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later."); W. Schwarzer, Federal Civil Procedure Before Trial ¶ 7:127 (The Rutter Group 2019) ("Thus, failure to join a party needed for a just adjudication—but who is *not* 'indispensable'—is waived if not timely asserted.") (emphasis in original).

Avery did not assert joinder as a defense in any of his answers. ECF 32, 37, 112. Moreover, as the Court previously ruled, Avery never filed a proper motion to dismiss under Rule 12(b)(7) or a proper motion for judgment on the pleadings under Rule 12(c). ECF 130, 133. Accordingly, to the

1    extent Avery asserts Urso and FWIPH are required parties under Rule 19(a) but not indispensable

2    parties under Rule 19(b), he has waived that defense.

3    **B.    Urso, FWIPH and Avery's Other Lenders Are Not Required Parties**

4    In any event, neither Urso, FWIPH nor Avery's lenders are required parties under Rule 19(a)

5    for the reasons explained below.

6    **1.    Rule 19(a)(1)(A):  The court can "accord complete relief among the
7    existing parties"**

8    Rule 19(a)(1)(A) is of no help to Avery because it requires joinder of a party only if "in that

9    person's absence, the court cannot accord complete relief among existing parties."  That is clearly not

10   the case here.  As this Court has explained, "[t]his prong concerns whether complete relief may be

11   accorded only among *current* parties to the action."  *First Nat'l Ins. Co. of Am. v. Peralta Cmty.*

12   *College Dist.*, No. 12-cv-5943 JSC, 2013 U.S. Dist. LEXIS 21265, *9-10 (N.D. Cal. Feb. 15, 2013)

13   (emphasis in original); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d

14   861, 879 (9th Cir. 2004).  It does not consider whether the Court can or should accord relief as to

15   absent parties.  Here, neither Urso, nor FWIPH nor Avery's other lenders are required to "accord

16   complete relief" between Avery and Forman.  As explained above, the MOU is a one-page contract

17   between Avery and Forman, and neither Urso, nor FWIPH nor any of Avery's lenders is a party to it.

18   Recognizing this, Avery tries to shoehorn Urso, FWIPH and his other lenders into Rule

19   19(a)(1)(A) by arguing they are third-party beneficiaries of the MOU.  ECF 188 at 21, 27-31;[4] *see*

20   *also* ECF 197 at 10-12.  The problem with Avery's argument is that under California law, only "[a]

21   contract, made *expressly for the benefit of a third person*, may be enforced by him at any time before

22   the parties thereto rescind it."  Cal. Civ. Code § 1559 (emphasis added).  "The contract must be

23   *expressly* for the benefit of the third party.  Hence, a person only remotely benefited, or a mere

24   incidental beneficiary, cannot enforce it."  1 B.E. Witkin, Summary of California Law, Contracts §

25   [4] The cases Avery cites in his Rule 19 motion are inapposite.  ECF 188 at 28.  *See*
26   *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975) (indispensable party was entitled to
     royalties under the lease at issue and it could not be joined due to sovereign immunity); *Davis v.*
27   *M&M Developer, LLC (In re MBM Entm't, LLC)*, 531 B.R. 363, 417 (S.D.N.Y. Bankr. 2015)
     (plaintiff sought rescission of transfers of property without joining a party to the transfer agreement).

28

7

709 (11th ed. 2019) (citing cases) (emphasis in original).  Courts routinely reject efforts by a non-party to a contract to assert claims contending it is an intended third-party beneficiary of the contract.[5]  In the context of Rule 19, the Ninth Circuit has explained that even an absent party to a contract is not a required party simply because the relief sought in an action "implicates the absent party's contract rights."  *Ward v. Apple*, 791 F.3d 1041, 1053 (9th Cir. 2015).  Here, the absent parties do not get close.  The MOU does not provide *any* contract right to any absent party that it can enforce against Forman.  Thus, the absent parties do not even qualify as remote or incidental beneficiaries of the MOU.

Regardless of Avery's spin on the MOU, there is no doubt that it was designed for Avery's benefit by changing the assets he pledged as security for the loans he obtained from Forman.  Although Avery asserts Urso and FWIPH benefitted from the MOU, nothing in it suggests that Forman was granting either company an enforceable right against Forman.  In fact, Avery grossly overstates the relevance of the MOU.  Avery created the document that effected the Assignment of the FairWay IP from Urso to FWIPH, and he signed it on behalf of FWIPH.   Goldstein Decl. Ex. 2 (12/22/11 Urso to FWIPH Assignment).  The Assignment contains absolutely no reference to the MOU.  To the contrary, the Assignment contains an integration clause that excludes, among other things, the MOU: "The parties each represent that in entering into this Agreement, they rely on no promise, inducement, or other agreement not expressly contained in this Agreement; . . . ."  *Id.* at ¶ 8.3 (page 23).  Having disclaimed any reliance on the MOU, Urso and FWIPH cannot now claim that it was made "expressly" for their benefit.

Nor are Avery's other lenders third-party beneficiaries of the MOU.  They, too, are not mentioned in the MOU, and nothing in their agreements with Avery mentions the MOU.  Nothing

---

[5] *E.g.*, *Martin v. Bridgeport Community Ass'n, Inc*., 173 Cal. App. 4th 1024 (2009) (occupants of home in a planned development community were not intended third-party beneficiaries of an agreement between owners and homeowners association); *Lundeen Coatings Corp. v. Dep't of Water & Power*, 232 Cal. App. 3d 816, 833-34 (1991) (subcontractor was not intended beneficiary of contract between primary contractor and city department); *Sheppard v. Banner Food Products*, 78 Cal. App. 2d 808 (1947) (plaintiff was not intended beneficiary of contract despite loaning money to one party to the contract based on the contract).

8

suggests that Forman ever intended that individuals who loaned Avery funds to have a right to enforce the MOU against Forman.  Accordingly, Avery's lenders are not even remote or incidental beneficiaries of the MOU.[6]

## 2. Rule 19(a)(1)(B):  The absent parties do not claim any interest and, in any event, Avery is representing any attenuated interest they might have

Rule 19(a)(1)(B) also does not help Avery.  Under that provision, a party must be joined if "that person *claims* an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  (Emphasis added.)  "Joinder is 'contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action.'"  *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (emphasis in original) (citation omitted).  The "interest must be more than a financial stake, and more than speculation about a future event.'"  *Cachil Dehe Band of Wintun Indians v. Cal.*, 547 F.3d 962, 970 (9th Cir. 2008) (citation omitted).

Here, neither Urso, nor FWIPH, nor any of Avery's lenders has *claimed* any interest in the action, so their joinder is not required and the case should proceed to trial without them.  *See First Nat'l Ins.*, 2013 U.S. Dist. LEXIS 21265, *11 ("Because IMR has not claimed an interest in the action, the Court need not analyze this factor further."); *citing Bowen*, 172 F.3d at 688-89 (where non-party was aware of the action and chose not to claim a legally protected interest joinder was not necessary).

---

[6] Avery misleadingly suggests that the financing he was pursuing at the time of the MOU – the financing he promised would enable him to pay off Forman's loans in 2012 – is somehow connected to the new personal loans Avery received from the other lenders starting in 2012.  ECF 188 at 28-29.  Not so.  The "Secured Note" program planned at the time of the MOU was a major financing for *FairWay International LLC, a Hungarian company*, which would aid the launch of the first FairWay operating company.  *See* Goldstein Decl. Ex. 5 (Trial Ex. 245) (Avery: "The Master diagram for the Secured Note Deal Structure").  This major financing for FairWay International never materialized.  The "Secured Note" program was not designed to facilitate numerous additional small personal loans to Avery.

9

There can be no dispute that Urso and FWIPH have been aware of the action since before Avery even filed it because he created, controls and operates both companies. Neither company has claimed any interest in the action – because Avery has deliberately chosen *not* to have them claim an interest – so their joinder is not required. As we have explained above, Avery's other lenders have no interest in this action, because it concerns Avery's and Forman's relationship. It does not concern either party's relationship with Avery's lenders. But if Avery's lenders have any interest as Avery claims, then as their debtor he presumably has informed them of Forman's claims. If so, none has claimed an interest and their joinder accordingly is not required. If not, that should be deemed conclusive evidence that Avery's indispensable party gambit is a sham.

Equally important, even if Urso, FWIPH or any of Avery's other lenders has an interest in this action, Avery is more than adequately representing those interests. As the Ninth Circuit has explained:

> As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit. . . . In determining whether an absent party is adequately represented by an existing party, we consider "whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect."

*Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (citations omitted) (Indian Tribes were not necessary parties because their interests could be adequately represented by the federal defendants); *e.g.*, *SiRNA Therapeutics, Inc. v. Protiva Biotherapies, Inc.*, No. C-06-1361 MMC, 2006 U.S. Dist. LEXIS 90773 (N.D. Cal. Dec. 1, 2006) (subsidiary's interests adequately represented by parent).[7]

As Avery has demonstrated in the many briefs he has filed, as the person who created, controls and operates Urso and FWIPH, he is adequately representing their interests. He is making all of their arguments, he is capable and willing to make them, and nothing suggests those companies

---

[7] This principle has been applied in a wide variety of circumstances. *E.g.*, *JP Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 652-53 (7th Cir. 2014) (employees' interests adequately represented by employer); *Altmann v. Republic of Austria*, 142 F. Supp. 2d 1187 (C.D. Cal. 2001) (interests of plaintiffs' heirs adequately represented by plaintiff), *aff'd* 317 F.2d 954 (9th Cir 2002).

would offer a necessary element to the proceedings that Avery is neglecting.  The same is true of Avery's lenders.  Avery claims they are on his side of the "v," and his Rule 19 brief argues that his lenders have a right to assert the same defenses to the rescission claim that he is asserting.  ECF 188 at 20.  Thus, Avery is representing his lenders' interests with respect to rescission of the MOU (though they have none) in the same way he is representing the interests of Urso and FWIPH.

Avery has failed to carry his burden of demonstrating that Urso, FWIPH or any of his other lenders is a required party under Rule 19(a).  None is required to "accord complete relief among existing parties," none "claims an interest relating to the subject of the action," and to the extent any of them has any interest (however attenuated), Avery is adequately representing those interests.

### 3.    Avery's Concerns Regarding Possible Future Events Are Irrelevant

Lacking any serious arguments that Urso, FWIPH or his lenders are required parties,  Avery spins out irrelevant possible future events that he says could occur if the MOU is rescinded and Forman's security interest is restored.  ECF 188 at 28-31.  But none of the events Avery ruminates about is the result of restoring Forman's security interest.  Instead, they are nothing more than his personal speculation about possible events if Forman enforces his security interest after it is restored. Avery's speculation about the possibility of future events is insufficient to turn the absent parties into required or indispensable parties.  *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1046 (9th Cir. 1983) ("Speculation about the occurrence of a future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties under Rule 19.")

For example, Avery contends that restoring Forman's security interest will interfere with his operation of FWIPH's business.  ECF 188 at 18-21.[8]  Not so.  Nothing about restoring Forman's direct security interest will have any bearing on FWIPH's business.  Indeed, Avery claims that his other 160 lenders have a security interest in the FairWay IP, but he does not suggest that those security interests have prevented him from operating FWIPH.  And if they do, there is no reason to

---

[8] Avery seems to be asserting that Forman is asking the Court to "undo the rehypothecation of the [FairWay IP] to the status *quo ante* . . . ."  ECF 188 at 17.  If Avery is saying that Forman is asking the Court to rescind the assignment of the FairWay IP to FWIPH, that is not true.  Forman is asking only that the Court rescind the MOU so Forman's direct security interest in the FairWay IP (now owned by FWIPH) is restored.  Restoration of Forman's security interest would not require or result in the FairWay IP being returned to Urso.

1   believe that adding Forman's security interest will have any incremental effect on top of the other 160

2   security interests.

3       Next, Avery complains that if Forman's security interest is restored, Forman "would be in a

4   position to execute his judgment this Court has ordered in his favor on his breach of contract claim on

5   the FairWay intellectual property as collateral and FairWay IP Holdings . . . ."  ECF 188 at 30.

6   Exactly.  A borrower's business is often interrupted when he refuses to repay his debts, especially if a

7   lender obtains a judgment.  Avery's speculation that a later legal proceeding, if brought, might affect

8   FWIPH's business is not a reason to deny Forman's right to have his pre-MOU security interest

9   restored.

10       Avery also worries that if Forman pursues his collateral rights it "will lead to a myriad of

11   lawsuits and challenges against both parties by the 160 absent investors."  ECF 188 at 23.  That is,

12   again, pure speculation and therefore irrelevant to the analysis.  But even if true, the possibility Avery

13   will face claims from his other lenders is not a reason to grant him a Rule 19 "Get Out of Jail Free"

14   card for his intentional breach of the MOU.  Equally important, Avery always faces the risk of claims

15   filed by lenders he hasn't repaid; that will always be true even if Forman's security interest is not

16   restored.  Of course, the real reason Avery is vexed by the potential restoration of Forman's security

17   interest is that Forman, unlike Avery's other lenders, has enough "skin in the game" to press his

18   claims against Avery and, if necessary, execute on his security interest in the FairWay IP.[9]

19   **C.    If Urso or FWIPH Is a Required Party It Can Be Joined Under Rule 19(a)(2)**

20       For the reasons explained above, there is no colorable argument that Avery's other lenders are

21   required parties so joinder under Rule 19(a)(2) is irrelevant as to them.  Although we believe neither

22   Urso nor FWIPH is a required party, if the Court has a different view that party (or both) can be

23   joined and the case can proceed apace.  Since Avery claims the companies are required and he owns

24   and controls them, we would expect him (on behalf of the companies) to stipulate to service of an

25   _____

    [9]  As Exhibit A to his declaration demonstrates, none of Avery's other lenders has enough

26   money at stake to make it worth filing a lawsuit against Avery for his nonrepayment of loans.  After
    being pre-emptively sued in this case, Forman is in a position to do so given the amounts of principal

27   and interest Avery has refused to repay him, plus the fees and costs of this suit, which we believe
    Forman should be awarded post-judgment.

28

amended counterclaim, consent to jurisdiction (although he previously has suggested he would contest jurisdiction for Urso and FWIPH),[10] and quickly serve answers to the counterclaim.  Also, Avery initiated the litigation and his knowledge is imputed to the companies, so it would take no time for the companies to get up to speed.  There also would be no need for further discovery. Accordingly, a very short adjournment of the trial would be more than sufficient if either company must be joined.

### D.    If Urso or FWIPH Is a Required Party But Joinder Is Not Feasible, the Trial Should Proceed Without It

Finally, if joinder of Urso or FWIPH is required but not feasible, the Court should proceed with the trial as scheduled.  Under Rule 19(b), the Court must determine "whether, in equity and good conscience," the case "should proceed among the existing parties or should be dismissed."  Dismissal for non-joinder "is a drastic remedy . . . which should be employed only sparingly."  *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999); *NovelPoster v. Javitch Canfield Group*, No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 46375, *13 (N.D. Cal. Apr. 1, 2014) (declining to impose "drastic remedy of dismissal for failure to join a necessary and indispensable party").[11]  "That is particularly true when it appears that defendant's primary purpose for bringing a Rule 19 motion to dismiss is to gain an unfair tactical advantage."  W. Schwarzer, Federal Civil Procedure Before Trial ¶ 7:131 (The Rutter Group 2019).

Rule 19(b) lists four factors to be considered "in equity and good conscience."  They "are not intended to exclude other considerations which may be applicable in particular situations."  Fed. R. Civ. P. 19, Advisory Committee note of 1966.  "Rule 19(b) requires [the court] to undertake a 'practical examination of [the] circumstances to determine whether an action may proceed 'in equity and good conscience' without the absent party."  *Paiute-Shoshone Indians of the Bishop Cmty v. City of Los Angeles*, 637 F.3d 993, 1000 (9th Cir. 2011), *citing Provident Tradesmens Bank & Trust Co. v.*

---

[10] Avery notes that Urso and FWIPH can be served under the Hague Service Convention (ECF 188 at 33), but he is studiously silent about whether he (on their behalf) would or would not contest or consent to jurisdiction.

[11] *See also Askew v. Sheriff of Cook County, Illinois*, 568 F.3d 632, 634 (7th Cir. 2009) (under Rule 19(b) dismissal is "not the preferred outcome").

*Patterson*, 390 U.S. 102, 119 n.16 (1968).  "The inquiry is flexible and pragmatic."  Moore's Federal Practice ¶ 19.05[1][b].

The first factor considers "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties."  Fed. R. Civ. P. 19(b)(1).  As explained above, the absence of Urso or FWIPH will not prejudice those companies or Avery.  Rescission of the MOU will not affect Urso's 100% ownership of FWIPH or FWIPH's ownership of the FairWay IP.  It simply will restore Forman's security interest in the FairWay IP – the same security interest he once had and which Avery claims his other lenders now have.  Furthermore, Urso and FWIPH are aware of the litigation and have opted not to claim any interest in it, and in any event Avery is adequately representing any interest they might have.  Avery complains that if Forman's security interest is restored and Forman seeks to enforce his rights, it "will certainly prejudice [Avery] and subject him to additional litigation with uncertain outcomes; . . . ."  ECF 188 at 34.  But being held responsible for one's conduct through the legal process is not the "prejudice" contemplated in the indispensable party analysis.  In fact, Avery is trying to turn the indispensable party analysis on its head:  He is trying to use it to block legal proceedings against him to prejudice Forman or anyone else who might want to bring a claim against him.

The second factor considers "the extent to which any prejudice could be lessened or avoided by . . . (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures."  Fed. R. Civ. P. 19(b)(2).  Avery does not address this factor other than to say that "it is pure folly to speculate how this Court could place protective provisions in the judgment or shape the relief to take other measures to lessen or avoid the prejudice to the parties in this litigation under the second factor in Rule 19(b)."  ECF 188 at 34.  Forman disagrees.  Although we believe there is no risk of prejudice to Urso, FWIPH or Avery's lenders resulting from rescission of the MOU, the Court can enter a judgment that avoids or mitigates any such risk.  For example, the judgment can make clear that rescission of the MOU does not reach the issue of whether Forman's security interest takes priority as to any other lenders.  The same is true of the injunction Forman has asked the Court to enter – "an appropriate injunction to ensure the FairWay IP remains available so Forman can execute on his security interest."  ECF 192 at 5, 20.  We are confident that the Court (perhaps with the parties'

14

assistance) will be able to craft an appropriate injunction that will ensure the FairWay IP remains available as collateral not only for Forman, but for all lenders to whom Avery has pledged the IP as collateral.

The third factor considers "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). This factor "echoes the 'complete relief' clause" analysis under Rule 19(a)(1)(A). Moore's Federal Practice ¶ 19.05[4]. For the reasons explained above, the judgment will be adequate as to Forman and Avery since they are the only parties to the MOU. Once Forman's security interest is restored, if he decides to execute on his security interest legal proceedings will ensue and other parties may assert whatever rights they may have.[12]

The fourth factor considers "whether [Forman] would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). The answer to that is a resounding no. Lack of an alternative forum is a "critical consideration" under Rule 19(b). *Pasco Int'l (London), Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 (7th Cir. 1980). Here, the lack of one should be dispositive.

As noted above, Avery originally argued that Urso and FWIPH are indispensable parties requiring dismissal because, in part, the Court does not have jurisdiction over them. ECF 129 at 11, 22. He suggested that Belize or the Cayman Islands would be a suitable jurisdiction for Forman to pursue a rescission claim. ECF 129 at 16; ECF 132 at 19. Not so. As a threshold matter, it is not at all clear that either country could exercise jurisdiction over the non-resident company and all of Avery's other lenders that Avery insists must be joined. But even if they could, neither Belize nor the Cayman Islands is the appropriate forum for a lawsuit between two U.S. citizens residing in the United States regarding a U.S. contract (the MOU) that was entered into in the United States and is governed by California law. Forman would be substantially prejudiced by having to file a new lawsuit in Belize or the Cayman Islands that runs in parallel with this lawsuit, the likely follow on

---

[12] If history is any guide, Avery's other lenders will *never* be repaid by Avery unless and until the FairWay IP is monetized by someone other than Avery. For over 15 years, Avery has been unable to obtain financing for the FairWay business, and he also has refused to liquidate or otherwise monetize any of the IP that he obtained by taking loans from Forman and his other lenders. If Forman exercises his collateral rights, it is possible Avery's other lenders could also be repaid.

collection action, and an appeal by Avery.  Forman almost surely would be unable to obtain the type of discovery he can obtain in the United States.  Moreover, while Forman tried to pursue a claim in one of those foreign jurisdictions, his loans would remain unpaid for even more years, interest would continue to accrue, and he would be forced to incur additional attorney's fees and costs for a brand-new lawsuit.

Recognizing that Belize or the Cayman Islands is not a suitable alternative forum – particularly after Avery filed his own MOU-based claims here in the United States – Avery has retooled his argument to suggest Forman should sue him and the purported indispensable parties in California state court.  This makes no sense.  If Forman sues Avery's companies in state court, Avery is not going to have a change of heart, consent to jurisdiction for Urso and FWIPH, and behave like a normal litigant.  Avery is going to contest jurisdiction and do everything in his power – as he has here – to drag that case out for years, too.

Finally, this Court has spent an extraordinary amount of time and effort learning and managing the case, resolving discovery disputes, ruling on the cross-motions for summary judgment, and preparing the case for trial.  The Court is well positioned to rule on Forman's rescission claim and shape appropriate relief.  It would be a waste of judicial resources for the parties to start from scratch in a foreign jurisdiction in a new court with a new judge trying to understand and apply the intricacies of California law.

### E.     Objection to Evidence Regarding Avery's Rule 19 Motion to Dismiss

Forman objects to Avery's declaration in support of his Rule 19 motion to the extent it relies on Exhibits A through H.  Exhibits C through H were not produced in discovery.  As explained above, Forman asked Avery at the start of the case to produce documents "relating to any loans or debts owed by Avery t'Bear, the FairWay Group or any FairWay operating company to any person or entity other than Forman."  Goldstein Decl. Ex. 1 (8/25/17 Avery RFP Response No. 47).  Avery objected and refused to produce responsive documents on the grounds that the request "inappropriately seek[s] personal and private information which is beyond the scope of discovery and not relevant nor likely to lead to relevant evidence."  *Id*.  Exhibits C through H are copies of documents that appear on Avery's trial exhibit list.  Avery has not responded to our request that he

tell us when and how he produced these documents and, if so, where they are located in his production.  Goldstein Decl. Ex. 3 (7/24/19 Jaeger email to Avery).

As this Court previously admonished both Avery and Forman, if documents are not produced in discovery they may not be used in the case, which of course means in motion practice or at trial. ECF 98; *see also* Goldstein Decl. Ex. 4 (6/26/18 Hearing Transcript at 5, 14).  Accordingly, Exhibits C through H are inadmissible and should not be considered.  In addition, Exhibit A, purportedly an "unaudited" list of 160 of Avery's lenders, lacks foundation and in any event is based on documents Avery did not produce during discovery.  Exhibit B similarly is based on documents not produced in discovery.  Exhibits A and B also are inadmissiable and should not be considered.

## IV.  Avery's "Primary Right" Defense Is Without Merit

Avery's Rule 19 brief has a lengthy description of his "primary right" defense under California law, so we address that defense here (as we mentioned in Forman's Proposed Pretrial Order).  Although somewhat difficult to follow, we understand Avery's argument to be along the following lines:  Forman's allegations regarding Avery's conduct constitute an alleged violation of a single primary right, but Forman has impermissibly split the single cause of action arising from the alleged violation into a claim for damages and a claim for rescission.  ECF 188 at 14-16, 24; ECF 198-1 at 8.  As we discuss below, Avery fundamentally misunderstands the primary right doctrine, which has no application to this case.

The essence of Avery's argument seems to be that Forman cannot rescind the MOU and still enforce the underlying loan agreements.  Wrong.  California law is clear that an amendment to a contract, or any divisible or separable portion of a contract, may be rescinded in equity leaving the remainder of the contract valid and enforceable.  *Merced County Mut. Fire Ins. Co. v. State of California*, 233 Cal. App. 3d 765, 775-76 (1991) (endorsement to insurance contract held severable from main contract: "the issues relating to the validity of the endorsement are severable from the main policy and [the insurer] may seek its rescission without seeking rescission of the main policy").  *See also Simmons v. Cal. Institute of Technology*, 34 Cal. 2d 264, 275 (1949) ("where a good cause

17

1    for rescission exists as to one part of a divisible or separable contract, such portion may be rescinded

2    in equity without disturbing the remainder").[13]

3    　　　Turning to Avery's "primary right" argument, Avery appears to contend that Forman is

4    violating the primary right doctrine by seeking rescission following the Court's order granting

5    Forman's summary judgment motion on his damages claim.   Avery misunderstands the doctrine,

6    which the California Supreme Court has explained as follows:

7    　　　　　The primary right theory is a theory of code pleading that has long been
     followed in California.  It provides that a "cause of action" is comprised
8    　　　　　of a "primary right" of the plaintiff, a corresponding "primary duty" of
     the defendant, and a wrongful act by the defendant constituting a
9    　　　　　breach of that duty.  [citation]  The most salient characteristic of a
     primary right is that it is indivisible: the violation of a single primary
10   　　　　　right gives rise to but a single cause of action.  [citation]   A pleading
     that states the violation of one primary right in two causes of action
11   　　　　　contravenes the rule against "splitting" a cause of action.  [citation]  As
     far as its content is concerned, the primary right is simply the
12   　　　　　plaintiff's right to be free from the particular injury suffered.  [citation]
     It must therefore be distinguished from the *legal theory* on which
13   　　　　　liability for that injury is premised: "Even where there are multiple
     legal theories upon which recovery might be predicated, one injury
14   　　　　　gives rise to only one claim for relief."  [citation]  The primary right
     must also be distinguished from the *remedy* sought: "The violation of
15   　　　　　one primary right constitutes a single cause of action, though it may
     entitle the injured party to many forms of relief, and the relief is not to
16   　　　　　be confounded with the cause of action, one not being determinative of
     the other."
17

18

19   *Crowley v. Katleman,* 8 Cal. 4th 666, 681-82 (1994) (citations omitted).  The purpose of the doctrine

20   is to reduce multiple lawsuits based on the same facts giving rise to a cause of action.[14]  For that

21   reason, "[t]he primary right theory has a fairly narrow field of application.  *It is invoked most often*

22   　　　[13] Avery's position boils down to an argument that Forman had to choose between (1) seeking
23   damages but not regaining his original security interest, or (2) regaining his original security interest
     but not obtaining a money judgment.  ECF 188 at 24; ECF 198-1 at 7.  This makes no sense.  Forman
24   is entitled to seek damages for nonrepayment of the loans and also to rescind the MOU in order to
     restore his original security interest if Avery does not satisfy a money judgment.
25
     　　　[14] The term "cause of action" used in this sense means an action that arises from the violation
26   of a primary right.  Of course, "cause of action" also can mean the specific counts in a complaint that
     assert different claims, legal theories and remedies arising from that cause of action.  *See Slater v.*
27   *Blackwood*, 15 Cal. 3d 791, 795-96 (1975); *McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159-60
     (1997).  This could be the source of Avery's confusion.
28

---

18

*when a plaintiff attempts to divide a primary right and enforce it in two suits. . . .*  The latter application of the primary right theory appears to be most common: numerous cases held that when there is only one primary right an adverse judgment in the first suit is a bar even though the second suit is based on a different theory. [citation omitted]).”  *Id.* at 682 (emphasis added).

Avery is misapplying the doctrine here because, as explained above, Forman is not dividing a single cause of action based on a single primary right and enforcing it in two different lawsuits.  To the contrary, Forman is pursuing in a single lawsuit two independent claims based on Avery's separate breaches of (1) nonrepayment of loans pursuant to the loan agreements and the loan managers, and (2) his unlawful dilution of his 100% Urso ownership to 25%.  Avery's breaches of these separate covenants contained in different documents – and which took place at different times – resulted in violations of two primary rights.  *See Mycogen Corp. v. Monsanto*, 28 Cal. 4th 888, 904-09 (2002) (explaining that breaches of separate covenants constitute violations of separate primary rights).  Forman's assertion of different counts, legal theories and relief based on these two separate breaches is entirely consistent with the purpose of the primary right doctrine, which is to reduce the multiplicity of lawsuits.

Perhaps recognizing this, Avery tries to manufacture a second lawsuit by arguing that Forman has only one cause of action and has improperly split it by pursuing his rescission claim after the Court granted Forman's summary judgment motion on his first claim for breach of contract.  This reflects a misunderstanding of the effect of the Court's summary judgment order, which is not a final judgment.  The Court will not enter a final judgment until after the rescission trial.  Thus, not only is Forman not splitting a single cause of action, but he also is not pursuing his claims in two different cases.  Avery's primary right argument is fundamentally infirm for this reason as well.

## V.      Conclusion

Avery's personal house of cards – built on more than 13 years of taking numerous loans and breaking promises to repay them – is collapsing.  Like his many other arguments aimed at avoiding the consequences of his actions, Avery's last gasp “indispensable parties” argument should be

//

rejected.  The Court should deny Avery's motion and proceed with the trial of Forman's rescission claim on August 20.

Dated:  July 26, 2019                              Respectfully submitted,

                                                   **FARMER BROWNSTEIN JAEGER & GOLDSTEIN LLP**

                                                   By:   */s/ David M. Goldstein*
                                                         David M. Goldstein

                                                         Attorneys for Defendant and Counter-claimant
                                                         Barry Forman