UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB AVERY T'BEAR,<br><br>  Plaintiff,<br><br>  v.<br><br>BARRY FORMAN,<br><br>  Defendant. | Case No. 17-cv-00796-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 246 |

Plaintiff Caleb Avery t'Bear sued Defendant Barry Forman in California state court for breach of fiduciary duty, declaratory relief, and an accounting arising out of a failed business venture.[1] (Dkt. No. 1-1.)[2] Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(b), based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1 at ¶ 4.) Defendant subsequently brought counterclaims for breach of loan agreements, rescission, and in the alternative, equitable relief. (Dkt. No. 84.) Following the parties' cross motions for summary judgment, and a bench trial on the remaining counterclaim, the Court entered judgment in favor of Defendant and against Plaintiff on all claims and counterclaims. (Dkt. No. 240.) Now pending before the Court is Defendant's motion for attorneys' fees. (Dkt. No. 246.) After careful consideration of the parties' briefing,[3] the Court GRANTS IN PART Defendant's motion.

**BACKGROUND**

**I.   Factual Background**

The factual background of this case is set forth in detail in the Court's February 2019

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 8.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] Pursuant to Civil Local Rule 7-1(b), the Court vacated the hearing scheduled for May 7, 2020. (Dkt. No. 254.)

Orders on the parties' cross motions for summary judgment, (*see* Dkt. No. 142 at 2-11), and its Findings of Fact and Conclusions of Law Following Bench Trial, (*see* Dkt. No. 235 at 12-23). The Court incorporates that background here.

## II.   Procedural History

The procedural history of this case is set forth in the Court's Findings of Fact and Conclusions of Law Following Bench Trial, (*see* Dkt. No. 235 at 1-2). The Court incorporates that background here. On February 24, 2020, in connection with its Findings of Fact and Conclusions of Law and its February 2019 orders on the parties' cross motions for summary judgment, (*see* Dkt. Nos. 142 & 148), the Court issued a Judgment in favor of Defendant and against Plaintiff as to all claims in this action; specifically: (1) all of Plaintiff's claims against Defendant; (2) Defendant's counterclaim against Plaintiff for breach of loan agreements ("promissory notes"), awarding $1,410,895 in damages; and (3) Defendant's counterclaim for rescission of the December 2011 Memorandum of Understanding ("MOU"), restoring Defendant's direct security interest in the FairWay IP. (Dkt. No. 240.) Defendant filed the instant motion for attorneys' fees on March 24, 2020. (Dkt. No. 246.) The motion is fully briefed. (*See* Dkt. Nos. 252 & 253).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 54(d)(2), Northern District of California Local Rule 54-5, California Code of Civil Procedure § 1021, and California Civil Code § 1717, Defendant moves for attorneys' fees as the prevailing party in this litigation, based on the 33 promissory notes at issue in Defendant's counterclaims—all but one of which contains a fee-shifting provision entitling the prevailing party in litigation regarding enforcement of the loans to an award of reasonable attorneys' fees.[4] (Dkt. No. 246 at 6.)

The Court must apply state law in adjudicating Defendant's motion for attorneys' fees because this a diversity action. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). There is no dispute that 30 of the 32 promissory notes containing the fee-shifting

---

[4] The loan between Defendant and FairWay International Kft, which is located in Hungary, does not include a fee shifting provision. (*See* Dkt. No. 99-2, Ex. 25 at 98.)

provisions are governed by California state law, and the other two are governed by Delaware state law. (*See* Dkt. No. 142 at 3.) There is likewise no dispute that both California state law and Delaware state law recognize the validity of reciprocal fee-shifting provisions. *See, e.g.*, *Scott Co. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999) ("When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Cal. Civ. Code § 1717(a)] entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims."); *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014) ("[I]t is settled that contracting parties may agree to . . . obligate the losing party to pay the prevailing party's fees.").

A choice-of-law analysis between California and Delaware law is unnecessary to resolve Defendant's motion because (1) there is no dispute over which law applies and both parties apply California law, and (2) California and Delaware both recognize the validity of "prevailing party" fee-shifting provisions. Thus, the Court applies California law because 30 of the 32 promissory notes containing the fee-shifting provisions are governed by California law and the analysis under either state's law is not materially different.

The validity of the fee-shifting provisions is not in dispute; indeed, Plaintiff takes "no issue with costs specifically associated with enforcement and collection of the loans." (*See* Dkt. No. 252 at 3.) Instead, Plaintiff opposes the requested award on the grounds that the amount sought is unreasonable because it encompasses attorney hours that were not specific to "the enforcement and collection of the loans."[5] (*See id.* at 4.) Given that Defendant's entitlement to an award of attorneys' fees as the prevailing party in this litigation is undisputed,[6] the Court addresses only the scope of the fee-shifting provisions and the reasonableness of the requested award.

---

[5] Plaintiff's opposition contains arguments regarding the merits of Defendant's rescission counterclaim and the validity of the Court's Findings of Fact and Conclusions of Law. (*See* Dkt. No. 252 at 13-19.) Those issues are not before the Court. Plaintiff filed a Notice of Appeal with the Ninth Circuit on April 7, 2020 concerning the Court's February 2019 Orders on the parties' cross motions for summary judgment and related orders, and the Court's Findings of Fact and Conclusions of Law. (Dkt. No. 249.) Thus, the Court addresses Plaintiff's opposition only as it relates to Defendant's request for attorneys' fees.

[6] California Civil Code § 1717(b)(1) defines the "prevailing party" as the "party who recovered greater relief in the action on the contract." As previously discussed, the Court entered judgment in favor of Defendant on all claims in this action. (Dkt. No. 240.)

**I.      Scope of Attorneys' Fees Provisions**

California Code of Civil Procedure § 1021 provides, in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Pursuant to section 1021, "parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." *Palmer v. Shawback*, 17 Cal. App. 4th 296, 299 (1993) (internal quotation marks and citation omitted). California Civil Code § 1717(a) specifically applies to actions "on a contract," and provides, in pertinent part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

"California courts liberally construe the term 'on a contract' as within section 1717." *Hjelm v. Prometheus Real Estate Grp., Inc.*, 3 Cal. App. 5th 1155, 1168 (2016) (internal quotation marks and citation omitted). "As long as the action 'involves' a contract it is 'on the contract' within the meaning of section 1717." *Id.* (alterations, internal quotation marks, and citation omitted). As the court explained in *Hjelm*:

> An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause.

*Hjelm*, 3 Cal. App. 5th at 1170 (internal quotation marks and citation omitted). Further, "[w]here an attorney fee clause provides for an award of fees incurred in enforcing the contract, the prevailing party is entitled to fees for any action 'on the contract,' whether incurred offensively or defensively." *Turner v. Schulz*, 175 Cal. App. 974, 980 (2009).

There is no dispute that Plaintiff drafted the promissory notes at issue and that all but one

4

includes a fee-shifting provision.[7]  The first two notes, for loans of $100,000 and $135,000 respectively, provide, in pertinent part:

> Should any litigation be commenced between [Defendant] and [Plaintiff] regarding this Agreement, the Note, or any other transaction contemplated by this Agreement, the party, [Defendant] or [Plaintiff], prevailing in that litigation shall be entitled, in addition to any other relief that may be awarded, to a reasonable sum as and for [Defendant's] or [Plaintiff's] attorneys' fees in that litigation which shall be fixed by the court in that litigation or in a separate proceeding brought for that purpose.

(Dkt. No. 99-2, Ex. 1 at 15, § 20 (note signed by Plaintiff for FairWay Pricing Technologies, LLC ("FairWay Pricing") both as a "Chairperson Executive Committee Manager/Member" of FairWay Pricing and as "an individual, Guarantor") & Ex. 2 at 30, § 19.)

The other promissory notes provide, in pertinent part:

> In the event the Note shall be in default and given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected through probate, bankruptcy, or other judicial proceeding, then Borrower shall pay Lender all costs of collection and enforcement, including reasonable attorney's fees.

(Dkt. No. 99-2, Exs. 3-24 at § 5; Exs. 26-33 at § 5.)

Defendant seeks attorneys' fees in the amount of $2,666,660.  That amount reflects 5,298 attorney and paralegal hours of work spread across four law firms,[8] and covers the entire duration of this litigation—from January 2017 when Plaintiff initiated the underlying action in state court, (*see* Dkt. No. 246-7, Ex. F at 2), to April 2020 when Defendant filed his reply in support of the instant motion, (*see* Dkt. No. 253-2, Ex. A at 9).  Thus, Defendant's motion raises two initial questions regarding the scope of the fee-shifting provisions: (1) whether they cover fees incurred

---

[7] The loan between Defendant and FairWay International Kft, which is located in Hungary, does not include a fee shifting provision.  (*See* Dkt. No. 99-2, Ex. 25 at 98.)

[8] The law firm Farmer Brownstein Jaeger Goldstein & Klein LLP ("Farmer") has been Defendant's primary counsel since the outset of the underlying action in January 2017 to the present, (*see* Dkt. Nos. 246-1 at ¶¶ 2, 29, 30; 246-7, Ex. F; 253-1 at ¶¶ 3-6; 253-2, Ex. A).  During the course of this litigation, Defendant also retained the services of the following firms: Buchalter, A Professional Corporation ("Buchalter") at various times between November 2017 and April 2020, (*see* Dkt. Nos. 246-8 at ¶¶ 4-12, 15; 246-10, Ex. B; 253-3 at ¶¶ 6-9; 253-4, Ex. A); Keller Benvenutti Kim LLP ("KBK") at various times between July 2019 and April 2020, (*see* Dkt. Nos. 246-11 at ¶ 4; 246-13, Ex. B; 253-5 at ¶¶ 4-5; 253-6, Ex. A); and Paul Hastings LLP ("Paul Hastings") at various times between May 2018 and March 2020, (*see* Dkt. Nos. 246-14 at ¶¶ 3-6, 9; 246-16, Ex. B; 253-7 at ¶¶ 4-7; 253-9, Ex. B).

in defending against Plaintiff's affirmative claims; and (2) whether they cover fees incurred in prosecuting all of Defendant's counterclaims. The Court addresses those questions in turn.

### A.     Fees Incurred in Defending Against Plaintiff's Claims

Plaintiff filed the underlying action in state court on January 17, 2017, bringing claims for: (1) breach of fiduciary duty arising out of an alleged partnership between the parties; (2) declaratory relief; and (3) an accounting. (Dkt. No. 1-1, Ex. 1.) The complaint lists the dates and amounts of the promissory notes at issue, details the collateral for the notes, and discusses the MOU. (*See id.* at 5-7, ¶¶ 9-12.) Plaintiff's claim for declaratory relief references the promissory notes, alleging that the "obligations outlined by the terms of the Notes were modified by the terms of the MOU." (*Id.* at 8, ¶ 26.) The claim requests "a judicial declaration . . . relating to the above and the parties' rights, duties and obligations to each other." (*Id.* at 9, ¶ 29.) Plaintiff's claim for an accounting incorporates "each and every allegation set forth" in the paragraphs that precede it, and alleges that "there was a contractual relationship between the Parties and a balance is due and accounting." (*Id.* at ¶¶ 30-31.) Thus, the claim "demands an accounting of amounts due and owing." (*Id.* at ¶ 32.)

Defendant asserts that the language of the fee-shifting provisions encompasses the affirmative claims set forth in Plaintiff's complaint because all claims in this action—whether brought by Plaintiff or Defendant—"concerned the loan agreements at issue." (Dkt. No. 246 at 13.) The Court agrees.

As to the fee-shifting provisions in the first two promissory notes, the language broadly provides for reasonable attorneys' fees to the prevailing party in "*any* litigation . . . commenced between [Defendant] and [Plaintiff] *regarding this Agreement*, the Note, or any other transaction contemplated by this Agreement." (*See* Dkt. No. 99-2, Ex. 1 at 15, § 20 & Ex. 2 at 30, § 19 (emphasis added).) "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims." *Santisas v. Goodin*, 17 Cal. 4th 599, 836 (1998). The question then is whether the breach of fiduciary duty claim constitutes "any litigation . . . regarding" the promissory notes such that it triggers the fee-shifting provision pursuant to section 1021. It does.

6

1    The Court interprets the language "any litigation . . . regarding" the promissory notes as
2    including both contract and tort claims that are "in reference or relation to" the notes. *See* Oxford
3    English Dictionary (3d ed. 2009) (defining "regarding" as "[i]n reference or relation to; about,
4    concerning"). Plaintiff's breach of fiduciary duty claim was premised on the existence of a
5    partnership between the parties. The complaint alleges, in pertinent part, that "Defendant, as part
6    of his agreed upon support for the partnership/joint venture, provided funding for the
7    partnership/joint venture which funds were characterized as Promissory Notes." (*See id.* at 5, ¶ 9
8    (listing every promissory note at issue).) In other words, Plaintiff cited the promissory notes as
9    evidence supporting his allegations of a partnership and he sought declaratory relief regarding the
10   status of those notes. Thus, the breach of fiduciary duty claim was not independent of the
11   promissory notes and was instead related to "the underlying transactional relationship between the
12   parties, as memorialized by the [promissory notes]." *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal.
13   App. 4th 1338, 1344 (1992) (reversing denial of attorneys' fees on various tort claims, including
14   breach of fiduciary duty, pursuant to section 1021 based on broad fee-shifting provision in
15   underlying agreement). Accordingly, Defendant's defense of the breach of fiduciary duty claim
16   falls within the broad fee-shifting provision in the first two promissory notes.

17   The Court need not determine whether the "collection or enforcement" language in the
18   remaining promissory notes encompasses the breach of fiduciary duty claim because there is no
19   way to apportion the fees covered under the broadly worded fee-shifting provisions from fees
20   related to the other notes. Courts recognize that attorneys' fees "need not be apportioned when
21   incurred for representation on an issue common to both a cause of action in which fees are proper
22   and one in which they are not allowed." *See Hjelm*, 3 Cal. App. 5th at 1178. It follows that fees
23   need not be apportioned when a claim is related to multiple agreements containing fee-shifting
24   provisions and the language of some of those provisions cover the fees incurred in defending that
25   claim.

26   In sum, the fee-shifting provisions were triggered by Plaintiff's complaint because the
27   action was related to the promissory notes for purposes of California Code of Civil Procedure §
28   1021. It follows that Defendant, as the prevailing party on *all* claims in this action, is entitled to

7

reasonable attorneys' fees incurred in defending against Plaintiff's affirmative claims. The Court next addresses application of the fee-shifting provisions to Defendant's counterclaims and concludes that the fees Defendant incurred in prosecuting those claims are also covered.

### B. Fees Incurred Prosecuting Counterclaims

As previously discussed, Defendant filed his original counterclaim for breach of the promissory notes in May 2017. (*See* Dkt. No. 29.) That counterclaim is clearly encompassed by the fee-shifting provisions because it seeks to enforce the terms of the notes. Plaintiff does not argue otherwise, and instead challenges the provisions' application to Defendant's counterclaim for rescission of the MOU.

The Court concludes that both the broad fee-shifting provisions and the "collection or enforcement" provisions apply to Defendant's rescission counterclaim. "Under California law, the parties to a contract have the power to add, change or cancel provisions so long as the purpose and effect of the original contract are left undisturbed. Such a modification only supersedes those terms to which it relates." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 876-77 (9th Cir. 1995) (citations omitted). The Court's Findings of Fact and Conclusions of Law determined that the MOU by its terms modified only the collateral securing the promissory notes at issue. (Dkt. No. 235 at 14-15, 29-30, 32 ("[T]he MOU amended only the collateral for the loans and did not amend [Plaintiff's] obligation to repay them.").) Further, the Court determined that rescinding the MOU would clarify Defendant and Plaintiff's "respective rights and obligations under the MOU and the underlying promissory notes." (*Id.* at 26.)

The MOU was therefore inextricably intertwined with the promissory notes because the MOU modified the promissory notes' terms of collateral and enforcing one document was dependent on the other. *See Han*, 73 F.3d at 877 (noting that where supplemental agreement modifies and is dependent on original agreement courts may consider those portions of the latter not expressly superseded by the former as applying to claim involving breach of the supplemental agreement). Thus, the rescission counterclaim is on the contract for purposes of California Civil Code § 1717 because it is beyond reasonable dispute that a suit involving the collateral for the notes both "involve[d]" the notes and was an action "regarding" the notes for purposes of the fee-

8

1    shifting provision.  *See Hjelm*, 3 Cal. App. 5th at 1170.

2        It is of no moment that the MOU itself does not contain the fee-shifting provision.  *See Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 758 (2017) (concluding that attorneys' fee provision in option agreement applied to claim for breach of separate agreement that was superseded by the option agreement because the claim was a "dispute in connection with the option agreement").  The modification reflected in the MOU superseded only the terms of collateral.  It did not affect the fee-shifting provisions or any other terms of the notes.  Any effort to collect on the notes would require consideration of both the MOU and notes.  Thus, the rescission counterclaim was clearly a dispute "regarding" the notes for purposes of the first fee-shifting provision.

For the same reasons, the rescission counterclaim also concerned "collection or enforcement" of the notes for purposes of the second fee-shifting provision.  The Court determined after trial that Defendant's rescission counterclaim sought to restore his direct security interest in the FairWay IP to collateralize the promissory notes.  (Dkt. No. 235 at 27.)  In other words, Defendant's counterclaim had no purpose other than collecting on the notes.

The authorities cited by Plaintiff do not counsel a different result.  Plaintiff broadly asserts that Defendant impermissibly mixes "recoverable" fees (i.e., those related to enforcement of the promissory notes) with fees related to "other 'non-recoverable' legal tasks."  (*See* Dkt. No. 252 at 7.)  In support Plaintiff cites California Code of Civil Procedure § 1021.5; however, that section applies only to attorneys' fees in cases brought to enforce an "important right affecting the public interest" pursuant to California's private attorney general doctrine.  *See* Cal. Code Civ. Proc. § 1021.5; *see also Friends of Spring St. v. Nevada City*, 33 Cal. App. 5th 1092, 1107 (2019) ("[S]ection 1021.5 is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's fees.") (internal quotation marks and citation omitted); *Bui v. Nguyen*, 230 Cal. App. 4th 1357, 1364 (2014) ("In 1977, the California Legislature enacted section 1021.5 to provide courts with the statutory authority to award attorney fees under a private attorney general theory.").  Thus, section 1021.5 is irrelevant because this

United States District Court
Northern District of California

action does not involve enforcement of a right affecting the public interest. Instead, this case concerns a business relationship between two private litigants seeking only to advance their individual interests.

Plaintiff's citation to a law firm's 2017 blog post discussing *DisputeSuite.com, LLC v. Scoreinc.com*, 2 Cal. 5th 968 (2017) is similarly unavailing. (*See* Dkt. No. 252 at 9-10.) The California Supreme Court did not address the scope of fee-shifting provisions in *DisputeSuite.com*, and instead addressed whether the defendant was the "prevailing party" within the meaning of California Civil Code § 1717. *See* 2 Cal. 5th at 974-981. Here, the Court entered judgment in favor of Defendant on all claims in this action. Thus, *DisputeSuite.com* has no bearing on the application of the fee-shifting provisions in this case.

***

In sum, the fees Defendant incurred in both defending against Plaintiff's affirmative claims and prosecuting Defendant's counterclaims are covered by the fee-shifting provisions in the promissory notes. The Court turns to the reasonableness of the requested award.

## II. Reasonableness of Requested Award

Under California law "the trial court has broad authority to determine the amount of a reasonable fee," and that inquiry ordinarily involves application of the lodestar method in fee-shifting cases.[9] *PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). The parties do not

---

[9] There is no material difference between California and Delaware law regarding the "reasonableness" analysis in fee-shifting cases. In California, the lodestar figure is the starting point, and it may be adjusted "after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances of the case." *See PLCM*, 22 Cal. 4th at 1096 (internal quotation marks and citation omitted). Delaware courts consider similar factors in determining whether the requested award is reasonable. *See Sternberg v. Nanticoke Memorial Hosp., Inc. See* 62 A.3d 1212, 1220-21 (2013) (noting that courts determine reasonableness of fee-shifting award by considering: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."). The factors considered under both California and Delaware law are materially similar, and the touchstone under either approach is reasonableness.

dispute that the lodestar method is appropriate in this case. The lodestar figure is derived from "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also PLCM*, 22 Cal. 4th at 1095 (same). The lodestar may be adjusted either upward or downward "after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances of the case." *PLCM*, 22 Cal. 4th at 1096 (internal quotation marks and citation omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

As previously discussed, Defendant seeks attorneys' fees in the amount of $2,666,660, reflecting 5,298 attorney and paralegal hours of work spread across four law firms. The Court addresses the hours expended and rates charged in turn.

### A. Hours Expended

The number of hours expended should not exceed the number of hours reasonable competent counsel would bill for similar services. *Hensley*, 461 U.S. at 434. Courts may reduce the hours expended "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34).

Defendant submits declarations of attorneys from the four firms that represented him in this action[10] attesting to the hours worked by specific attorneys, and redacted invoices reflecting those hours. Pursuant to the Court's May 11, 2020 order, Defendant also submitted unredacted invoices for *in camera* review. (*See* Dkt. Nos. 256 & 257.) Defendant's submissions are sufficient to support his request for fees. *See Steiny & Co., Inc. v. California Elec. Supply Co.*, 79 Cal. App. 4th 285, 293 (2000) ("An attorney's testimony as to the numbers of hours worked is

---

[10] Lead counsel for Farmer, Mr. Charles R. Jaeger, attests that during the course of the litigation Defendant required "additional counsel for work requiring particular expertise." (Dtk. No. 246-1 at ¶ 52.)

sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."). The declarations and corresponding invoices are detailed and demonstrate that the hours expended were reasonable given the complexity, duration, and contentious nature of this litigation. It also bears noting that the hours expended reflect time that was already billed to and paid in full by Defendant, with the exception of certain of the most recent invoices for February, March, and April 2020. (*See* Dkt. Nos. 246-1 at ¶ 28 & 253-1 at ¶ 4 (attesting that fees for Farmer's services are paid in full through March 2020); 246-8 at ¶ 16 (attesting that fees for Buchalter's services are paid in full through January 2020); 246-11 at ¶ 6 (attesting that fees for KBK's services are paid in full through January 2020); 246-14 at ¶ 10 (attesting that fees for Paul Hastings' services are paid in full through February 2020). Defendant's payment reflects that he understood the hours expended to be reasonable and necessary, and he tendered payment even when recovery of those fees was uncertain. In sum, Defendant's submissions demonstrate that the hours expended were reasonable.

That said, the Court concludes that some portion of the hours of expended by all firms in this action was duplicative because it necessarily involved Farmer acquainting subsequent counsel with the underlying facts of the case. Plaintiff should not be on the hook for those fees. *See Hadley v. Krepel*, 167 Cal. App. 3d 677, 683 (1985) (finding plaintiff's objections appropriate as to fees "incurred as a result of becoming new counsel and acquainting subsequent counsel with the case"). Similarly, a reduction is warranted to the extent the work of counsel from each firm necessarily required review of work done by counsel from other firms based on overlapping issues. Accordingly, the Court reduces the overall hours expended by the lead attorney from each firm (Charles R. Jaeger (Farmer); Valerie Bantner Peo (Buchalter); Peter J. Benvenutti (KBK); and Thomas P. Brown (Paul Hastings)) by 5%, resulting in the following breakdown of reasonable hours expended:

**Farmer:**

| | |
|---|---|
| Charles R. Jaeger | 2,244.8 hours |
| David M. Goldstein | 1,396.8 hours |
| David Brownstein | 84.8 hours |

| | | |
|---|---|---|
| 1 | Kerry C. Klein | 175.2 hours |
| 2 | James E. Smith | 190.6 hours |
| 3 | Wendy Clymer | 63.3 hours |
| 4 | Raquel Rivera | 71.2 hours |
| 5 | Jim Absher | 3.5 hours |
| 6 | Jackson Jaeger | 638.7 hours |
| 7 | Cullen P. Conboy | 48.1 hours |
| 8 | Total: | 4,917.0 hours |

**Buchalter:**

| | | |
|---|---|---|
| Robert Zadek | 2.7 hours |
| Shawn Christianson | 1.3 hours |
| Kari Barnes | 6.7 hours |
| Benjamin Heuer | 36.1 hours |
| Valerie Bantner Peo | 106.8 hours |
| Russell L. Allyn | .6 hours |
| David P. Adams | 2.8 hours |
| Mikki F. Varela | 4.0 hours |
| Corina Rachina | 9.6 hours |
| Jason Anthony Sityar | 1.5 hours |
| Total: | 172.1 hours |

**KBK:**

| | |
|---|---|
| Peter J. Benvenutti | 50.9 hours |

**Paul Hastings:**

| | |
|---|---|
| Thomas P. Brown | 4.7 hours |
| Jane Y. Lee | 9.3 hours |
| Taylor L. Reeves | 6.6 hours |
| Abigail H. Wald | 5.0 hours |
| Shreya Gupta | 4.0 hours |

| | | |
|---|---|---|
| | Elizabeth Elliott | 1.5 hours |
| | Total: | 31.1 hours |

(*See* Dkt. Nos. 246-1; 246-8; 246-11; 246-14; 253-1; 253-3; 253-5; 253-7.)

Plaintiff's opposition broadly asserts that Defendant impermissibly mixes "'recoverable' attorney fees" (those related to the enforcement of the promissory notes) with 'non-recoverable' attorney fees" (all other aspects of the litigation). (*See* Dkt. No. 252 at 6.) That argument fails for the reasons previously stated; specifically, Plaintiff's affirmative claims and Defendant's counterclaims are all covered under the fee-shifting provisions at issue because the status of the promissory notes was an issue common to all claims, and as such, all claims are inextricably intertwined. *See Hjelm*, 3 Cal. App. 5th at 1178 (recognizing that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed") (internal quotation marks and citation omitted).

Plaintiff also argues that the amount of fees is "obviously and convincingly excessive" because it represents "five times the amount being enforced and collected under the attorney fee provision of the loans." (Dkt. No. 252 at 7.) That argument fails for two reasons. First, the Court's Judgment awarded monetary damages in the amount of $1,410,895.00, reflecting (1) $551,433.00 for the aggregate principal amount of the loans at issue, and (2) $859,462.00 in accrued interest. (Dkt. No. 240 at 1.) Thus, the amount of fees is not "five times the amount" awarded in damages. More importantly, Plaintiff cites no authority for the proposition that an award of attorneys' is *per se* unreasonable if it exceeds the amount of damages; indeed, there is no such authority. *See Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 626-27 (2015) (rejecting argument that $1.5 million fee award "in connection with the pursuit of a $945,000 claim" was unreasonable). Second, Plaintiff's argument is undercut by the tactics he employed in this litigation. The docket in this case reflects multiple discovery disputes regarding Plaintiff's failure to comply with his discovery obligations, including Court-ordered production of documents. Plaintiff also filed multiple procedurally improper motions or submissions that did not comply with the Civil Local Rules, and aggressively prosecuted his claims and opposed

14

Defendant's counterclaims. Defendant's response to such tactics took time and attention. Plaintiff cannot now assert that such hours were unnecessary. *See id.* at 627 (finding that fees were increased by opposing party's own conduct, and noting that "one cannot litigate tenaciously and be heard to complain about the time necessarily spent . . . in response") (internal quotation marks and citation omitted).

Having determined that the hours expended were reasonable, the Court turns to the rates charged by Defendant's counsel.

**B.     Rates**

A reasonable hourly rate is defined as "that prevailing in the community for similar work." *PLCM*, 22 Cal. 4th at 1095. In general, "the relevant community is the forum in which the district court sits," here, the Northern District of California. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (internal quotation marks and citation omitted). Defendant has satisfied that burden.

Defendant submits the declarations of Mr. Jaeger, Ms. Bantner Peo, Mr. Benvenutti, and Mr. Brown, who attest to the qualifications and rates of the attorneys and paralegals in this action. (*See* Dkt. Nos. 246-1 at ¶¶ 2-26; 246-8 at ¶¶ 4-13; 246-11 at ¶ 2; 246-14 at ¶¶ 2-7.) Defendant also submits the declaration of Richard M. Pearl, a California-based attorney whom Defendant retained to provide an expert opinion regarding the reasonableness of the attorneys' fees requested in this case. (Dkt. No. 246-17.) Mr. Pearl attests that he has "frequently been retained as an expert witness and/or consultant on attorneys' fee issues," and his declaration demonstrates that he is qualified to testify as an expert on such matters. (*See id.* at ¶¶ 4-9.) Mr. Pearl's declaration opines that the rates charged by Defendant's counsel are reasonable in light of the experience of counsel, the work performed, the nature of the litigation and results achieved, rates found reasonable in other cases in this District, and the hourly rates charged by law firms of similar reputation and size for civil litigation in California. (*Id.* at ¶¶ 10-25.)

Plaintiff does not challenge "the attorney rates quoted by Farmer for the purposes of a Lodestar calculation specific only to the enforcement and collection of the loans." (Dkt. No. 252 at 5.) Nor does Plaintiff's opposition address the rates of the other firms Defendant retained in this action. Based on Defendant's evidence as to the reasonableness of the rates charged, and Plaintiff's lack of opposition on that point, the Court is satisfied that the rates are reasonable.

### C. Lodestar

Based on the hours reasonably expended and rates charged, the lodestar figures for Defendant's counsel are as follows:

**Farmer:**

| | | |
|---|---|---|
| Charles R. Jaeger | $600/hour | 2,244.8 hours |
| David M. Goldstein | $600 | 1,396.8 hours |
| David Brownstein | $600 | 84.8 hours |
| Kerry C. Klein | $600 | 175.2 hours |
| James E. Smith | $175 | 190.6 hours |
| Wendy Clymer | $175 | 63.3 hours |
| Raquel Rivera | $150-$175 | 71.2 hours |
| Jim Absher | $100 | 3.5 hours |
| Jackson Jaeger | $75 | 638.7 hours |
| Cullen P. Conboy | $75 | 48.1 hours |
| Total: | | 4,917.0 hours |
| **Lodestar:** | **$2,448,180.50** | |

(*See* Dkt. No. 253-1 at ¶ 8.)

**Buchalter:**

| | | |
|---|---|---|
| Robert Zadek | $810-$815/hour | 2.7 hours |
| Shawn Christianson | $550 | 1.3 hours |
| Kari Barnes | $525-$530 | 6.7 hours |
| Benjamin Heuer | $450-$525 | 36.1 hours |

| | | |
|---|---|---|
| Valerie Bantner Peo | $350-$450[11] | 106.8 hours |
| Russell L. Allyn | $445 | .6 hours |
| David P. Adams | $350 | 2.8 hours |
| Mikki F. Varela | $250 | 4.0 hours |
| Corina Rachina | $310 | 9.6 hours |
| Jason Anthony Sityar | $215 | 1.5 hours |
| Total: | | 172.1 hours |
| **Lodestar:** | **$76,556.50** | |

(*See* Dkt. No. 253-3 at ¶ 9.)

**KBK:**

| | | |
|---|---|---|
| Peter J. Benvenutti | $800/hour | 50.9 hours |
| **Lodestar:** | **$40,720** | |

(*See* Dkt. Nos. 246-11 at ¶¶ 2, 4 & 253-5 at ¶ 4.)

**Paul Hastings:**

| | | |
|---|---|---|
| Thomas P. Brown | $1,225-$1425/hour[12] | 4.7 hours |
| Jane Y. Lee | $850-$885 | 9.3 hours |
| Taylor L. Reeves | $645 | 6.6 hours |
| Abigail H. Wald | $775 | 5.0 hours |
| Shreya Gupta | $690 | 4.0 hours |
| Elizabeth Elliott | $335 | 1.5 hours |
| Total: | | 31.1 hours |
| **Lodestar:** | **$25,406.40** | |

(*See* Dkt. No. 253-7 at ¶ 7.)

In line with the above, the Court concludes that a lodestar of $2,590,863.40 is supported by

---

[11] The Court reduces Ms. Bantner Peo's hours expended by 5% and accordingly reduces the total fee set forth in her declaration by 5% (a reduction of $2,470.50) because her fee reflects a blended rate.

[12] The Court reduces Mr. Brown's hours expended by 5% and accordingly reduces the total fee set forth in his declaration by 5% (a reduction of $306.10) because his fee reflects a blended rate.

17

the record.  Once a court has determined the lodestar, it may adjust the figure "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."  *PLCM*, 22 Cal. 4th at 1095.  Such factors "includ[e] the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case."  *Id.* at 1096 (internal quotation marks and citation omitted).

Consideration of the circumstances of this case does not warrant a reduction in the lodestar primarily because the contentious nature of the litigation and Plaintiff's failure to comply with his discovery obligations is well-documented and required Defendant to expend resources that he otherwise would not have needed to expend.  The parties vigorously litigated this action for over three years; engaging in multiple discovery disputes, filing cross-motions for summary judgment, participating in a bench trial, and filing post-trial closing arguments.  Defendant has been ably and skillfully represented at each stage.  Further, the results achieved—a judgment in Defendant's favor as to all claims in this action—likewise support application of the lodestar.  And although the amount of the award is high, a reduction of the lodestar on such grounds is not warranted because Defendant has already paid his attorneys' fees in full, with the exception of some of the most recent invoices for February, March, and April 2020.  Thus, as the prevailing party on all claims and counterclaims in this action, Defendant is entitled to be compensated in full for those amounts pursuant to the promissory notes' fee-shifting provisions.

### III.    Taxable Costs

Federal Rule of Civil Procedure 54(d)(1) creates a presumption that the prevailing party will be awarded its taxable costs.  *See Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 (1981); *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006) ("Under Federal Rule of Civil Procedure 54(d), there is a presumption that the prevailing party will be awarded its taxable costs."); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.").  "To overcome this presumption, a losing party must establish a reason to deny costs."  *Dawson*, 435 F.3d at 1070.  Further, "[a] district court . . . generally must award costs

unless the prevailing party is guilty of some fault, misconduct, or default worthy of punishment." *Id.* at 1071 (internal quotation marks and citation omitted).

Pursuant to Rule 54(d)(1), Defendant filed a Bill of Costs with the Clerk of Court on March 24, 2020, seeking $20,689.62 in taxable costs. The Clerk has yet to award costs. Plaintiff opposes the costs sought on the grounds that Defendant fails to "bifurcate the 'costs' between 'recoverable'" (i.e., related to enforcing the promissory notes) and "non-recoverable" (i.e., "other general legal purposes"). (Dkt. No. 252 at 10.) Plaintiff's argument is misplaced. Defendant's right to taxable costs as the prevailing party in this action arises from Rule 54(d), not the promissory notes' fee-shifting provisions. Thus, Plaintiff's objection has no bearing on whether Defendant's Bill of Costs complies with the Standards for Taxing Costs set forth under Civil Local Rule 54-3. It does. Further, Plaintiff points to no "fault, misconduct, or default" on the part of Defendant that is "worthy of punishment," such that the presumption under Rule 54(d)(1) does not apply.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Defendant's motion for attorneys' fees. Defendant is awarded $2,590,863.40 in reasonable attorneys' fees. The Clerk will decide Defendant's Bill of Costs; however, Plaintiff's objection about the failure to bifurcate is overruled.

This Order disposes of Docket No. 246.

**IT IS SO ORDERED.**

Dated: June 8, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge